# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Memphis Street Academy Charter School at J.P. Jones, et. al.

**DEFENDANTS**

School District of Philadelphia

**(b)** County of Residence of First Listed Plaintiff    PHILADELPHIA
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    PHILADELPHIA
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
David Annecharico; David Hussey
113 South 21 Street, Philadelphia, PA (215-851-0200)

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1  U.S. Government Plaintiff
- [X] 3  Federal Question *(U.S. Government Not a Party)*
- [ ] 2  U.S. Government Defendant
- [ ] 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | | | [ ] 820 Copyrights | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine | [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 830 Patent | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 460 Deportation |
| | [ ] 350 Motor Vehicle | [ ] 370 Other Fraud | [ ] 710 Fair Labor Standards Act | [ ] 840 Trademark | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 355 Motor Vehicle Product Liability | [ ] 371 Truth in Lending | [ ] 720 Labor/Management Relations | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 160 Stockholders' Suits | [ ] 360 Other Personal Injury | [ ] 380 Other Personal Property Damage | [ ] 740 Railway Labor Act | | [ ] 485 Telephone Consumer Protection Act |
| [ ] 190 Other Contract | [ ] 362 Personal Injury - Medical Malpractice | [ ] 385 Property Damage Product Liability | [ ] 751 Family and Medical Leave Act | **SOCIAL SECURITY** | [ ] 490 Cable/Sat TV |
| [ ] 195 Contract Product Liability | | | [ ] 790 Other Labor Litigation | [ ] 861 HIA (1395ff) | [ ] 850 Securities/Commodities/ Exchange |
| [ ] 196 Franchise | | | [ ] 791 Employee Retirement Income Security Act | [ ] 862 Black Lung (923) | [ ] 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | [ ] 863 DIWC/DIWW (405(g)) | [ ] 891 Agricultural Acts |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | **Habeas Corpus:** | | [ ] 864 SSID Title XVI | [ ] 893 Environmental Matters |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | | [ ] 865 RSI (405(g)) | [ ] 895 Freedom of Information Act |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment | [ ] 510 Motions to Vacate Sentence | | | [ ] 896 Arbitration |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations | [ ] 530 General | **FEDERAL TAX SUITS** | | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 535 Death Penalty | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | | [ ] 950 Constitutionality of State Statutes |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other | **Other:** | [ ] 871 IRS—Third Party 26 USC 7609 | | |
| | [X] 448 Education | [ ] 540 Mandamus & Other | **IMMIGRATION** | | |
| | | [ ] 550 Civil Rights | [ ] 462 Naturalization Application | | |
| | | [ ] 555 Prison Condition | [ ] 465 Other Immigration Actions | | |
| | | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d; the Supremacy Clause of the United States Constitution, U.S. Const. art. IV Para. 2; and the Fourteenth Amendment to the United States Constitution, U.S. Const. amend. XIV

Brief description of cause:
Injunctive and Declaratory Relief

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  [X] Yes  [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*      JUDGE _____      DOCKET NUMBER _____

DATE
July 15, 2022

SIGNATURE OF ATTORNEY OF RECORD
David Annecharico, Esq.

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

UNITED STATES DISTRICT COURT
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____2950 Memphis Street, Philadelphia, PA 19134_____

Address of Defendant: _____440 North Broad Street, Philadelphia, PA 19130_____

Place of Accident, Incident or Transaction: _____Philadelphia_____

---

**RELATED CASE, IF ANY:**

Case Number: _____  Judge: _____  Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?    Yes ☐    No ☐

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?    Yes ☐    No ☐

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?    Yes ☐    No ☐

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?    Yes ☐    No ☐

I certify that, to my knowledge, the within case ☐ is / ☐ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: _____    _____*Must sign here*_____    _____
                         *Attorney-at-Law / Pro Se Plaintiff*         *Attorney I.D. # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

**A.**   *Federal Question Cases:*

☐  1. Indemnity Contract, Marine Contract, and All Other Contracts
☐  2. FELA
☐  3. Jones Act-Personal Injury
☐  4. Antitrust
☐  5. Patent
☐  6. Labor-Management Relations
☑  7. Civil Rights
☐  8. Habeas Corpus
☐  9. Securities Act(s) Cases
☐  10. Social Security Review Cases
☐  11. All other Federal Question Cases
       *(Please specify):* _____

**B.**   *Diversity Jurisdiction Cases:*

☐  1. Insurance Contract and Other Contracts
☐  2. Airplane Personal Injury
☐  3. Assault, Defamation
☐  4. Marine Personal Injury
☐  5. Motor Vehicle Personal Injury
☐  6. Other Personal Injury *(Please specify):* _____
☐  7. Products Liability
☐  8. Products Liability – Asbestos
☐  9. All other Diversity Cases
       *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, _____David Annecharico_____, counsel of record *or* pro se plaintiff, do hereby certify:

☐  Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☑  Relief other than monetary damages is sought.

DATE: _____July 15, 2022_____    _____*Sign here if applicable*_____    _____91122_____
                         *Attorney-at-Law / Pro Se Plaintiff*         *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ. 609 (5/2018)

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MEMPHIS STREET ACADEMY CHARTER SCHOOL AT J.P. JONES; | : | |
| | : | |
| | : | |
| PATRICE ROGERS, on her own behalf, and on behalf of her minor child GR; and | : | CIVIL ACTION |
| | : | |
| | : | |
| NICAURIS ESTEVES, on her own behalf, and on behalf of her minor child EE, | : | NO. |
| | : | |
| | : | JURY TRIAL DEMANDED |
| PLAINTIFFS | : | |
| vs. | : | |
| | : | |
| SCHOOL DISTRICT OF PHILADELPHIA | : | |
| | : | |
| DEFENDANT | : | |
| | : | |

## <u>COMPLAINT</u>

Plaintiffs, by and through their undersigned counsel, bring this action against Defendant, and

aver as follows:

## I.  <u>PRELIMINARY STATEMENT</u>

1.      Defendant, the School District of Philadelphia ("SDP"), has initiated action to revoke

the charter of Plaintiff, Memphis Street Academy Charter School at J.P. Jones ("MSA") and compel

MSA to close.

2.      If it were to occur, such action would violate Title VI of the Civil Rights Act of 1964,

the Every Student Succeeds Act, , the Fourteenth Amendment of the United States Constitution, the

Pennsylvania Constitution, and Pennsylvania law.

3.      MSA therefore brings this action for injunctive and declaratory relief seeking to prevent SDP from taking action to revoke MSA's charter and close MSA.

## II.      JURISDICTION AND VENUE

4.      This Court has jurisdiction over these proceedings under 28 U.S.C. §1331, which provides for original jurisdiction in the United States District Courts for civil actions arising under the Constitution or laws of the United States. This action arises under Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d; the Supremacy Clause of the United States Constitution, U.S. Const. Art. IV Para. 2; and the Fourteenth Amendment of the United States Constitution, U.S. Const. amend. XIV.

5.      Pursuant to 28 US.C. § 1367, this Court has supplemental jurisdiction over all other claims herein as they are so related to the claims in the original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

6.      Venue is proper in this district under 28 U.S.C. §1391(b)(2) because the events giving rise to the claims herein, or a substantial part thereof, occurred in this judicial district. Venue is also proper in this judicial district under 28 U.S.C. §1391(c) because both parties may be found in this district.

## III.      PARTIES

7.      Plaintiff, Memphis Street Academy Charter School at J.P. Jones, is a Pennsylvania nonprofit corporation that operates a charter school in Philadelphia, Pennsylvania pursuant to the Pennsylvania Charter School Law, 24 P.S. §§ 17-1701-A, *et seq*.

8. Plaintiff Patrice Rogers ("Rogers") brings this action on her behalf and on behalf of her minor child, "GR", whom Rogers chose to enroll at MSA, rather than SDP. Rogers and GR are African Americans. Rogers desires that GR continue to be educated at MSA.

9. Plaintiff Nicauris Esteves ("Esteves") brings this action on her behalf and on behalf of her minor child, "EE", whom Rogers chose to enroll  at MSA, rather than SDP. Esteves and EE are Hispanic Americans whose primary language is Spanish. MSA has designated EE as an "English Language Learner". Esteves desires that EE continue to be educated at MSA.

10. Defendant, the School District of Philadelphia is a public school district organized and existing under the Pennsylvania Public School Code, 24 P.S. §§ 1-101, *et seq.*

## IV.  STATEMENT OF FACTS

### A.  General Background

11. MSA operates as a public charter school pursuant to a written charter agreement between MSA and SDP.  A copy of MSA's current charter agreement is attached hereto as Exhibit A.

12. Under Pennsylvania's Charter School Law, 24 P.S. §§ 17-1701-A, *et seq.* (the "CSL"), a charter school's charter exists for a specified term of years and may be either renewed for one or more additional terms or may be revoked or nonrenewed by a local school district for causes enumerated under the CSL.

13. Under the CSL, the school district in which a charter school operates is required to annually assess the charter school's performance and perform a comprehensive review prior to granting a charter renewal.

14.     The Charter Schools Office "CSO" is an office of SDP which SDP has designated with responsibility for monitoring charter schools to support SDP's charter school oversight responsibilities.

15.     Pursuant to SDP policy, the CSO is responsible for conducting performance reviews of charter schools in order to recommend to SDP's governing board whether a given charter school's charter should be renewed or nonrenewed at the end of its term, and whether any conditions should be imposed on a charter renewal.

16.     Pursuant to SDP policy, the CSO is required to make a recommendation regarding charter renewals based upon the charter school's cumulative academic performance, operational compliance, and financial health over the charter term.

17.     In order to render its recommendations, the CSO has developed a framework to evaluate the performance of each Philadelphia charter school (the "Renewal Framework").

18.     The CSO's Renewal Framework consists of three domains: academic success, organizational compliance and viability, and financial health and sustainability.

19.     Pursuant to CSO's Renewal Framework, a charter school will only be recommended for nonrenewal if it fails to meet standards in one or more domains.

20.     For reasons discussed below, the academic success domain of the Renewal Framework is heavily biased against certain racial minority groups.

21.     The CSO's application of the Renewal Framework has thereby consistently and disproportionately harmed charter schools which have served higher than average rates of students from racial minority groups.

22.     In the case of MSA, the CSO's application of the Renewal Framework has subjected MSA to unfair and unrealistic charter conditions and ultimately the current threat of closure.

**B. <u>Procedural Background</u>**

23.     In 2012, SDP granted MSA an initial charter to operate a charter school to educate students in grades 5-8.

24.     Since opening, MSA's charter has required MSA to enroll its students from the surrounding neighborhood, which contains high rates of poverty and a population that predominantly consists of members of racial minorities, many of whom are English Language Learners.

25.     In 2017, MSA applied for renewal of its charter agreement.

26.     On or around 2018, the CSO applied the Renewal Framework to evaluate MSA's renewal application and determined that MSA failed to meet standards for the academic success domain.

27.     In 2017, the School District of Philadelphia threatened to nonrenew MSA's charter unless it signed a new charter containing a Surrender Clause and certain academic performance conditions that, if violated, would trigger the Surrender Clause.

28.     The Surrender Clause contained in that 2017 charter provides:

> The Charter School acknowledges and agrees that if any of the academic conditions including specific performance targets, set forth in Article I, Section I are not met fully by the Charter School, the Charter School will surrender and forfeit its charter and will close on or before June 30, 2022. The Charter School will dissolve without protest and without recourse to the State Charter School Appeal Board or to any court of competent jurisdiction. The Charter Schools Office will make a determination on whether any of the academic targets set forth above are not met fully by the Charter School once data for 2020-21 school year are available and made public.

29.     In 2018, MSA acquiesced and executed a charter agreement containing these conditions.

30.     The academic conditions referenced in the Surrender Clause called for MSA to substantially improve the academic performance of its students over the five years of the charter term.

31.     The academic conditions imposed upon MSA by the 2017 Charter were unrealistic and unreasonable.

32.     Thus, the CSO and SDP leveraged MSA's failure to meet standards for the academic success domain on the Renewal Framework and the threat of nonrenewal to impose upon MSA unrealistic charter conditions and a Surrender Clause which would be triggered upon MSA's eventual failure to meet such conditions.

33.     MSA's current charter agreement expired June 30, 2022 and has thereafter continued by operation of law.

34.     In 2021, MSA submitted an application to the CSO for renewal of its charter.

35.     During the course of the CSO's renewal evaluation of MSA:

   a.  The CSO informed MSA of its intent to recommend renewal of MSA's charter; and

   b.  The CSO requested that MSA not make any formal comment or protest regarding its subsequently issued  Renewal Recommendation Report, which was privately published to MSA by the CSO. The CSO informed MSA that formal comment or protest was unwarranted because the CSO intended to render a renewal recommendation.

36.     Yet, on May 26, 2022, the CSO publicly reported to the Philadelphia Board of Education that MSA failed to meet the standard for academic success for the Renewal Framework and that MSA was in violation of the Surrender Clause.

37.     The CSO further, did not formally make a recommendation concerning MSA's request for renewal to SDP's governing Board of Education, in contradiction to SDP policy.

38.     Instead, on or about June 23, 2022, SDP's Board of Education approved Action Item No. 89, whereby it invoked the Surrender Clause contained in MSA's charter and thereby: (i) demanded that MSA surrender and forfeit its charter and close by June 30, 2023; and (ii) directed that MSA shall notify SDP by July 15, 2022 whether it will comply with such demand.  A true and correct copy of Action Item No. 89 is attached hereto as Exhibit B.

**C.  Racial Discrimination**

39.     The CSO's Renewal Framework disproportionately targets for closure charter schools which serve disproportionately high percentages of students from racial minorities.

40.     Thus, in imposing conditions upon MSA and now demanding that MSA surrender its charter and close, SDP has demonstrated an intent to employ against MSA accountability data and metrics that systemically target for school closure charter schools with disproportionately high percentages of students who are members of racial minorities.

41.     According to CSO's 2021-22 report of MSA during the 2021-22 school year, approximately 56% of the school's student population consisted of students who were Hispanic and 34.% of the student population consisted of students who were African American or Black, for a

combined total of 90%, while 4% of the student population was White and 0% of the student population was Asian.

42.     In comparison, according to CSO's 2021-22 report of MSA, during the 2021-22 school year, approximately 24% of the overall student population of the SDP consisted of Hispanic students and 47% of the overall student population consisted of African American or Black students, for a combined total of 71%, while 15% of the student population consisted of White students and 10% of the student population consisted of Asian students.

43.     Upon information and belief, the foregoing racial demographics of MSA and SDP have remained relatively consistent since MSA opened in 2012.

44.     With respect to charter schools that operate in Philadelphia, the SDP's sole  authority to seek and initiate the nonrenewal or revocation of a charter school's charter for causes is enumerated in 24 P.S. § 17-1719-A(a).

45.     If a charter school presents the causes for nonrenewal or revocation enumerated in 24 P.S. § 17-1719-A(a), it is discretionary on the part of SDP whether or not to pursue nonrenewal or revocation of the school's charter.

46.     Over the past several years, SDP has consistently and disproportionately nonrenewed and/or revoked the charters of charter schools which have served student populations with higher percentages of students from racial minorities than the overall student population of SDP, causing real and substantial harm to their students.

47.     Without exception, students' parents or guardians, including Plaintiffs Rogers and Esteves, opted for their children to attend the charter schools disproportionately targeted by the SDP for closure.

48.     The closure of these targeted schools, which has disproportionately harmed students from racial minorities, has been predicated upon the CSO's application of the Renewal Framework, which disproportionately targets charter schools that serve a disproportionately high percentage of minority students.

49.     The Renewal Framework is heavily weighted by data and metrics for which Hispanic and African American students materially underperform other student groups.  The Renewal Framework is thus biased against charter schools which educate high proportions of Hispanic and African American students.

50.     Upon information and belief, SDP is fully aware that the Renewal Framework is materially skewed against charter schools which serve disproportionately high percentages of Hispanic and African American students.

51.     Over the past several years, as in the case of MSA, SDP has additionally used its discriminatory Renewal Framework to justify the imposition of conditions upon the charters of charter schools that serve populations of Hispanic and/or African American students that are disproportionately larger than the SDP.

52.     For several years, charter schools and various other stakeholders have routinely protested the discriminatory impact that SDP's Renewal Framework has had on charter schools that disproportionately serve Hispanic and/or African American students.

53.     Upon information and belief, SDP is fully aware that its use and reliance upon the Renewal Framework has disproportionately harmed charter schools that have served Hispanic and/or African American students; and that SDP has thus disproportionately harmed the students that those schools have served.

54.     In nonetheless continuing to use and rely upon its discriminatory Renewal Framework, SDP has made a deliberate choice to disproportionately harm charter schools that have served Hispanic and/or African American students and has thus exhibited deliberate indifference to discriminatory treatment that these charter schools and their students have been subjected to.

55.     After years of public complaints, on or around December 2021, SDP engaged a law firm to conduct an internal investigation regarding racial bias allegations in charter school authorizations (the "SDP Discrimination Investigation").

56.     The SDP Discrimination Investigation is still ongoing.

57.     For SDP to initiate the closure of MSA while the SDP Discrimination Investigation remains pending would constitute willful indifference as to the discriminatory effect of SDP's Renewal Framework.

### D.  Linguistic Discrimination

58.     At present and at all times material hereto, MSA has educated a higher percentage of English Language Learners ("ELLs") than SDP.

59.     The Renewal Framework is heavily weighted by data and metrics for which ELLs materially underperform other student groups.  The Renewal Framework is thus biased against schools which educate high proportions of ELL students.

60.     Upon information and belief, SDP is fully aware that the Renewal Framework is materially skewed against charter schools which serve disproportionately high percentages of ELL students.

61.     In employing the Renewal Framework against MSA, SDP thereby discriminated against ELL students.

**E.   Every Student Succeeds Act**

62.     Even beyond its discriminatory impact, SDP's closure of MSA would violate several express requirements of the Every Student Succeeds Act (the "ESSA"), 20 U.S.C. ch. 28 §§ 1001, *et seq*.

63.     With respect to states that receive federal funding under the ESSA, the ESSA expressly requires that:

a.   The State Education Agency ("SEA") of the state shall develop a plan for the implementation of ESSA requirements, 20 U.S.C. § 6311(a)(1), and that such plan shall remain in effect for the duration of the state's participation in the ESSA.  20 U.S.C. § 6311(a)(6)(A)(i).  A state plan shall contain assurances that the SEA will assist each local educational agency ("LEA") and school affected by the State plan to meet the requirements of the ESSA.  20 U.S.C. § 6311(g)(2)(C).

b.   The SEA shall identify schools in need of comprehensive support and improvement. 20 U.S.C. § 6311(c)(4).  The LEA of any such school shall work in partnership with stakeholders (including principals and other school leaders, teachers, and parents) to develop and implement a comprehensive support and improvement plan for the school

to improve student outcomes, that, *inter alia*, includes evidence-based interventions. 20 U.S.C. § 6311(d)(1).

    c.   The SEA shall additionally identify schools in need of targeted support and improvement and the LEA of any such school shall work in partnership with stakeholders (including principals and other school leaders, teachers, and parents) to develop and implement a school-level targeted support and improvement plan to improve student outcomes that, *inter alia*, includes evidence-based interventions. 20 U.S.C. § 6311(d)(2).

    d.   The SEA shall establish statewide exit criteria for schools identified for comprehensive support and improvement or targeted support and improvement. 20 U.S.C. § 6311(d)(3)(A)(i).

64.    For comprehensive support and improvement schools, failure to meet the exit criteria within a prescribed number of years shall result in more rigorous State-determined action, such as the implementation of interventions (which may include addressing school-level operations). 20 U.S.C. § 6311(d)(3)(A)(i)(I).

65.    For targeted support and improvement schools in need of additional support, failure to meet the exit criteria within a State-determined number of years shall result in identification of the school by the State for comprehensive support and improvement. 20 U.S.C. § 6311(d)(3)(A)(i)(II).

66.    The foregoing statutory regime for the support and intervention of targeted support and improvement schools is mandatory and binding upon states that receive funding through the ESSA. In addition, to support the foregoing system of school interventions, the ESSA specifically

earmarks funds for comprehensive support and improvement schools and targeted support and improvement schools.  20 U.S.C. § 6303.

67.     Pennsylvania is a recipient of ESSA funds and is therefore subject to the requirements of the ESSA.

68.     As the SEA of Pennsylvania under the ESSA, the Pennsylvania Department of Education ("PDE") has promulgated the "Pennsylvania Consolidated State Plan" (the "State Plan") pursuant to 20 U.S.C. § 6311(a)(1).

69.     Under the State Plan, public schools may be designated as needing Targeted Support and Improvement ("TSI"), Additional Targeted Support and Improvement ("A-TSI") or Comprehensive Support and Improvement ("CSI").

70.     Under the State Plan, a TSI designation serves as a "precursor for more intensive accountability cycles".

71.     Under the State Plan, an A-TSI school is a school which has certain academic outcomes below a certain threshold over a three (3) year period.

72.     Under the State Plan, a CSI school is a school unable to exit from A-TSI designation after four (4) years.

73.     Under the State Plan, ESSA funded resources for technical assistance, interventions and support are mandated for schools with a CSI designation.

74.     Under the State Plan:

> **For all schools that fail to exit CSI status after four years** of initial identification, school improvement plans will be revised and will provide detailed SEA, LEA, and school-level strategies to ensure shared

responsibility and adequate provision of technical resources. Pennsylvania has significant, existing legislative authority to support this work, including the ability to appoint recovery officers and require submission of recovery plans in academically and financially challenged school districts (Act 141 of 2012). Chief recovery officers have broad discretion with respect to district finance, operations, and staffing, **and may close and reconstitute schools**, cancel and renegotiate contracts, and direct the locally-elected school board to implement needed reforms.

75. Thus, Pennsylvania complies with the ESSA by mandating a closed system of review and incremental support for certain public schools including criteria by which schools may exit ESSA designated support status.

76. MSA is currently designated by PDE as TSI, which is two steps removed from CSI designation.

77. The ESSA's mandatory process for the support and intervention reflects a clear policy decision to support and intervene schools rather than simply closing them.

78. Accordingly, it would be directly inconsistent with both the letter and spirit of the ESSA for a charter school designated as a targeted support and improvement school to be forced or compelled, under color of law, to close before exhaustion of ESSA's mandatory process for support and intervention.

79. For so long as MSA is designated for support and improvement school under ESSA, it would therefore constitute a violation of the ESSA for SDP or any other governmental institution to compel the closure of MSA through the invocation of the Surrender Clause.

80. Additionally, SDP's threatened closure of MSA would violate several provisions of the CSL and thus violate the express requirement of the ESSA that "[t]he accountability provisions under

this chapter shall be overseen for charter schools in accordance with State charter school law." 20

U.S.C. § 6311(c)(E).

81.     Specifically, SDP's threatened closure of MSA would violate the CSL and the ESSA in

the following respects: through enforcement of conditions within MSA's charter that are

unenforceable under the CSL, by considering factors that are irrelevant to whether a charter school

should be renewed, and by illegally employing a charter school performance framework that

discriminates against schools with high percentages of racial minorities and/or English language

learners.

**F.  <u>Violation of Public Interest</u>**

82.     Article III, Section 14 of the Pennsylvania Constitution requires that the Pennsylvania

General Assembly shall provide for the maintenance and support of a thorough and efficient system of

public education to serve the needs of the Commonwealth.

83.     Accordingly, the decisions of school boards must be based solely on consideration for

the people's interest in a thorough and efficient system of education.

84.     SDP's threatened closure of MSA would violate such public interest by being premised

upon a discriminatory charter school performance framework and constituting part of a

discriminatory pattern of SDP through which charter schools serving disproportionately high rates of

students from minority groups have been subject to closure.

85.     Upon information and belief, SDP lacks an evidence-based plan for MSA's students in

the event of MSA's closure.

86.     SDP's threatened closure of MSA would thus violate the public interest insofar as SDP lacks an evidence-based plan for MSA's students in the event of MSA's closure.

87.     SDP's threatened closure of MSA would also violate the public interest insofar as SDP would lack a rational basis for closing MSA.  MSA educates students in grades 5-8.  MSA's academic performance data is not reflective of deficiencies with MSA but is instead more reflective of the prior education of its students that matriculated to MSA from SDP schools, as well as a multitude of socioeconomic factors.  Closing MSA would not favorably impact any of those barriers but would instead merely serve pretextual grounds.

88.     SDP's threatened closure of MSA would also violate the public interest insofar as it would be premised upon incomplete data.  The COVID pandemic severely limited school operations and has thereby significantly limited the data upon which SDP can properly evaluate MSA's performance.

### G.  Illegal Charter Conditions

89.     In seeking to initiate closure of MSA, SDP seeks to invoke charter conditions that are illegal and unenforceable.

90.     The CSL does not permit the imposition of charter conditions which are inconsistent with the statutory provisions of the CSL.

91.     In seeking to compel MSA to close, SDP has invoked the Surrender Clause that is contained in MSA's charter.  The Surrender Clause is inconsistent with the CSL.  Whereas the CSL expressly prescribes that a charter school shall be entitled to due process before its charter is nonrenewed or revoked, the "Surrender Clause," which is set forth in Art. I, Section I  Paragraph 15 of

the charter, states that MSA waives those rights and shall immediately surrender its charter upon a finding by SDP that it has violated any of the academic performance conditions set forth in its charter.

92.     Furthermore, these academic performance conditions, which are set forth in Art. I, § I of the charter, are themselves inconsistent with the CSL insofar as they impose unrealistic academic performance requirements.

**V.     CLAIMS**

**COUNT 1. INJUNCTIVE RELIEF**

93.     SDP's use of the discriminatory Renewal Framework to evaluate MSA's charter renewal, as well as SDP's closure of MSA, would violate Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d; 34 C.F.R. Part 100; Article I, Section 26 of the Pennsylvania Constitution, Pa. Const. art. I, § 26; and Article I, Section 29 of the Pennsylvania Constitution, Pa. Const. art. I, § 29, as it subjects MSA and the students it serves to discriminatory policies and practices that disparately mistreat and impact Philadelphia charter schools with student populations that disproportionately consist of racial minorities and English language learners, as well as their students.  Upon information and belief, SDP has acted with knowledge and deliberate indifference to the discriminatory effect that such policies and practices have had on MSA, other similarly situated Philadelphia charter schools, and the student populations they serve.

94.     SDP's closure of MSA would additionally violate the Supremacy Clause of the United States Constitution, U.S. Const. Art. VI., by directly contradicting several requirements of the ESSA. Whereas the ESSA expressly requires that a school such as MSA which is designated as a targeted

support and improvement school must be supported through delineated processes, SDP's closure of MSA would directly violate such provisions.

95.     SDP's closure of MSA would additionally violate the requirement that the accountability provisions of the ESSA shall be overseen for charter schools in compliance with a state's charter school law.  For reasons discussed above, the threatened closure of MSA would violate several provisions of the CSL, and thus violate the ESSA.

96.     SDP's closure of MSA and its continued application of the discriminatory Renewal Framework would additionally violate Article III, Section 14 of the Pennsylvania Constitution, Pa. Const. art. III, § 14, on account of violating the people's interest in a thorough and efficient system of education.

97.     For SDP to compel MSA to surrender its charter and close pursuant to the Surrender Clause would also violate due process.  The Surrender Clause was unfairly imposed upon MSA and the action approved by SDP through Action Item No. 89 exceeds the scope of what is authorized under the Surrender Clause.

98.     If permitted to occur, the foregoing violations of law would cause irreparable harm to MSA and its students, which harm could not be compensated through the remedies available at law.

99.     Equity therefore compels that this Court exercise its authority to prohibit SDP from applying its discriminatory Renewal Framework to MSA or otherwise taking action to revoke or nonrenew MSA's charter.

100.     Such relief would promote the public interest by prohibiting unlawful discrimination and by upholding federal and state law.

## COUNT 2. DECLARATORY RELIEF: CHARTER CONDITIONS

101.    SDP seeks to compel MSA to close by invoking the Surrender Clause in MSA's charter.

102.    Such action is premised upon MSA's failure to meet academic conditions set forth in its charter.

103.    Both the Surrender Clause and the academic conditions referenced in the Surrender Clause are illegal and unenforceable on account of being inconsistent with the CSL.

104.    MSA therefore seeks declaratory relief to confirm that the Surrender Clause and the academic performance conditions set forth in MSA's charter are illegal and unenforceable.

105.    SDP's act of invoking the Surrender Clause presents a substantial and concrete controversy with respect to the question of whether the Surrender Clause and the academic conditions set forth in MSA's charter are illegal and unenforceable.

## COUNT 3. DECLARATORY RELIEF: VIOLATION OF DUE PROCESS

106.    For SDP to compel MSA to close by invoking the Surrender Clause in MSA's charter would violate due process.

107.    The Surrender Clause and academic conditions referenced therein were unfairly forced upon MSA and was thus not agreed upon voluntarily.

108.    Furthermore, the acts contemplated by SDP through Action Item No. 89 exceed the scope of the Surrender Clause.

109.    MSA therefore seeks declaratory relief to confirm that due process does not permit SDP to compel MSA to surrender its charter and close pursuant to the Surrender Clause.

**COUNT 4. DECLARATORY RELIEF: EVERY STUDENT SUCCEEDS ACT**

110.    Given MSA's designation under the ESSA as a targeted support and improvement school, it would be directly inconsistent with the ESSA for SDP to carry out its threat of initiating the closure of MSA.

111.    Contrary to permitting the closure of a targeted support and improvement school, the ESSA prescribes specific procedures that are designed to support (rather than close) such a school.  It would be directly inconsistent with the ESSA for a targeted support and improvement school to be forced or compelled to close.

112.    MSA therefore seeks declaratory relief to confirm that the ESSA prohibits SDP from causing or compelling MSA to close while it remains designated as a targeted support and improvement school.

113.    SDP's threat of taking action to close MSA presents a substantial and concrete controversy with respect to the question of whether such action would violate the ESSA.

**VI.    <u>PRAYER FOR RELIEF</u>**

WHEREFORE, Plaintiffs prays for relief as follows:

1.   With respect to COUNT 1, seeking injunctive relief, an Order:

    a.   Prohibiting SDP from applying the Renewal Framework to evaluate whether action should be taken by SDP to close MSA;

    b.   Prohibiting SDP from taking action to close MSA based upon SDP's application of the Renewal Framework;

    c.   Prohibiting SDP from taking action to compel MSA to close pursuant to the Surrender Clause;

    d.   Prohibiting SDP from taking action to close MSA while MSA is designated under the ESSA as a school entitled to support and improvement;

    e.   Prohibiting SDP from taking action to close MSA unless and until it puts forth an evidence-based plan for MSA's students in the event of MSA's closure and a rational basis for seeking to close MSA; and

    f.   Providing such other relief as this Honorable Court deems just and proper.

2.   With respect to COUNT 2, seeking declaratory relief with respect to charter conditions, an Order:

    a.   Declaring that the Surrender Clause contained in MSA's charter is illegal and unenforceable;

    b.   Declaring that the academic conditions referenced in the Surrender Clause contained in MSA's charter are illegal and unenforceable; and

    c.   Providing such other relief as this Honorable Court deems just and proper.

3.   With respect to COUNT 3, seeking declaratory relief that it would violate due process for MSA to be compelled to surrender its charter pursuant to the Surrender Clause, an Order:

    a.   Declaring that it would violate due process for SDP to take action to enforce Action Item No. 89 to compel MSA to close; and

    b.   Providing such other relief as this Honorable Court deems just and proper.

4. With respect to COUNT 4, seeking declaratory relief with respect to the Every Student

   Succeeds Act, an Order:

   a. Declaring that SDP may not take action to close MSA while MSA is designated

      under the ESSA as a targeted support and improvement school; and

   b. Providing such other relief as this Honorable Court deems just and proper.


                              Respectfully submitted,



Dated: <u>July 15, 2022</u>             _____
                                         SAND & SAIDEL, P.C.
                                         David Annecharico, Esq. (PA Bar No. 91122)
                                         David Hussey, Esq. (PA Bar No. 314814)
                                         113 South 21st Street
                                         Philadelphia, PA 19103
                                         Tel: (215) 851-0200
                                         Fax: (215) 851-9990
                                         Email: dannecharico@sandsaidel.com
                                         Counsel for Plaintiffs