**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MEMPHIS STREET ACADEMY CHARTER SCHOOL AT J.P. JONES, et al. | : : : : | CIVIL ACTION |
| Plaintiffs, | : : | No. 2:22-cv-02760 |
| v. | : : | |
| SCHOOL DISTRICT OF PHILADELPHIA, et al. | : : : | |
| Defendants. | : : | |

## ORDER

AND NOW, this _____ day of _____, 2022, upon consideration of the Motion to Dismiss filed by all Defendants, i.e., The School District of Philadelphia, Dr. Tony B. Watlington, Superintendent, Peng Chao, Acting Chief of the School District's Charter Schools Office, and Board of Education Directors Joyce Wilkerson, Leticia Egea-Hinton, Sarah Ashley-Andrews, Chau Wing Lam, Julia Danzy, Mallory Fix Lopez, Lisa Salley, Reginald Streater, and Cecilia Thompson, and the opposition thereto of Plaintiffs, it is hereby ORDERED and DECREED that the Motion to Dismiss is GRANTED.  It is also ORDERED that all claims in the Amended Complaint against the Defendants are dismissed with prejudice.

IT IS SO ORDERED.

_____
CHAD F. KENNEY
UNITED STATES DISTRICT JUDGE

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| MEMPHIS STREET ACADEMY CHARTER SCHOOL AT J.P. JONES, et al. | : : : : : | CIVIL ACTION |
| Plaintiffs, | : : | No. 2:22-cv-02760 |
| v. | : : | |
| SCHOOL DISTRICT OF PHILADELPHIA, et al. | : : : | |
| Defendants. | : : | |

## <u>DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT</u>

All Defendants, The School District of Philadelphia, Dr. Tony B. Watlington, Superintendent, Peng Chao, Acting Chief of the School District's Charter Schools Office, and Board of Education Directors Joyce Wilkerson, Leticia Egea-Hinton, Sarah Ashley-Andrews, Chau Wing Lam, Julia Danzy, Mallory Fix Lopez, Lisa Salley, Reginald Streater, and Cecilia Thompson ("Defendants"), by and through their undersigned counsel, pursuant to Federal Rule of Civil Procedure 12(b)(6), submit this Motion to Dismiss Amended Complaint. In support of the Motion, Defendants rely upon the grounds stated in the accompanying Memorandum of Law.

Respectfully submitted,

*/s/ Allison S. Petersen*

Allison S. Petersen (PA 86335)
Paul J. Cianci (PA 82717)
David W. Brown (PA 201553)
Levin Legal Group, P.C.
1301 Masons Mill Business Park
1800 Byberry Road
Huntingdon Valley, PA 19006
Phone (215) 938-6378
pcianci@levinlegalgroup.com

apetersen@levinlegalgroup.com
dbrown@levinlegalgroup.com
*Attorneys for All Defendants*

Dated: September 8, 2022

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MEMPHIS STREET ACADEMY CHARTER SCHOOL AT J.P. JONES, et al. | : : : | CIVIL ACTION |
| | : | |
| Plaintiffs, | : : | No. 2:22-cv-02760 |
| v. | : : | |
| SCHOOL DISTRICT OF PHILADELPHIA, et al. | : : : | |
| Defendants. | : : | |

**MEMORANDUM OF LAW
IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT**

**I.      INTRODUCTION**

Memphis Street Academy Charter School ("MSA" or "Charter School"), through this collateral attack on the performance framework used by the School District of Philadelphia ("School District") to evaluate **all** brick and mortar charter schools operating in Philadelphia, preemptively seeks to avoid the consequences of its poor academic performance, which fell below the negotiated and delineated standards agreed to in its signed 2017 Charter agreement with the School District. In an apparent acknowledgement of the limited likelihood of MSA avoiding the surrender of its Charter under those 2017 Charter terms, MSA throws a proverbial pile of legal spaghetti at the wall in an effort to see if anything will stick.

In 2018, MSA and the School District signed a Charter for a five-year charter term effective July 1, 2017 through June 30, 2022 ("2017 Charter"). Exhibit A to the Amended Complaint ("Complaint") (ECF No. 7-3). The School Reform Commission ("SRC"), then the governing body of the School District, was the charter school authorizer in Philadelphia at that time. *Id.* The SRC

approved the 2017 Charter by resolution. *Id.* The executed 2017 Charter contains a negotiated "Surrender Clause" that provides that MSA will surrender and forfeit its Charter and close if any of the academic conditions including specific performance targets set forth in the Charter are not met fully by MSA. Complaint, ¶ 28; Exhibit A to Complaint, p. 11 (2017 Charter, Article I, Section I, ¶ 15).

In June 2022, the School District's current governing body, the Board of Education ("BOE"), approved an Action Item stating that MSA had failed to comply with the renewal conditions in the Charter, exercising the Surrender Clause and requiring MSA to forfeit its Charter and to close by June 30, 2023. Exhibit B to Complaint (ECF No. 7-4). Instead of commencing the process to close by June 30, 2023, MSA commenced this action.

In an effort to avoid the Surrender Clause provision in the 2017 Charter **to which MSA agreed**, Plaintiffs makes numerous claims, all of which fail to state a claim upon which relief can be granted. Specifically, Plaintiffs raise vague and conclusory allegations of discrimination that are insufficient to survive a motion to dismiss. Plaintiffs' discrimination claims are based exclusively on conclusory statements that do not contain enough factual content to allow a court to draw the reasonable inference that the School District is liable for the misconduct alleged. Moreover, Plaintiffs assert Supremacy Clause and due process violations that are improperly raised in a complaint that was not brought under Section 1983, and that are invalid as a matter of law. Even more, the three parent Plaintiffs do not have standing to bring the claims raised in this matter. For those general reasons, and as explained in detail below, the Court should grant the School District's motion to dismiss and dismiss all of Plaintiffs' claims with prejudice.

## II.     FACTUAL BACKGROUND

There are four Plaintiffs in this action: (1) MSA; (2) Patrice Rogers, on her own behalf, and on behalf of her minor child G.R., a student who attends MSA; (3) Nicauris Esteves, on her own behalf, and on behalf of her minor child E.E., a student who attends MSA; and (4) Jennifer Bermudez, on her own behalf, and on behalf of her minor child S.F, a student who attends MSA. Complaint (ECF No. 7), ¶ 8-11.[1] A copy of the Complaint with exhibits is attached as Exhibit A.[2]

The defendants are: the School District; Dr. Tony B. Watlington, the current Superintendent of the School District; each of the nine members of the BOE (Joyce Wilkerson, President, Leticia Egea-Hinton, Vice President, Sarah Ashley-Andrews, Chau Wing Lam, Julia Danzy, Mallory Fix Lopez, Lisa Salley, Reginald Streater, and Cecilia Thompson); and Peng Chao, Acting Chief of Charter Schools. Complaint, ¶¶ 12-23. (The non-School District Defendants are referred to herein as the "individual Defendants.")

MSA is a Pennsylvania nonprofit corporation that operates a public charter school in Philadelphia under Pennsylvania's Charter School Law, 24 P.S. § 17-1701-A, *et seq.* ("CSL"). Complaint, ¶¶ 8, 24. Through Resolution No. SRC-36, dated January 20, 2010, the SRC adopted the Renaissance School Initiative Policy, which authorized the SRC to grant Renaissance charters as part of the School District's Renaissance Schools Initiative. Exhibit A to Complaint, p. 1. As

---

[1] As this is a motion to dismiss, we will refer to the "facts" only as the Plaintiffs have pled them and will refrain from pointing out the disagreements Defendants have about the pled facts.

[2] Undersigned counsel hereby certify to the Court that on August 25, 2022—more than seven days before the filing of this motion to dismiss—they met and conferred with counsel for the Plaintiffs regarding the pleading deficiencies noted in this motion to dismiss.

part of that Initiative, the District designated certain chronically underperforming District schools to be "Renaissance Schools." *Id.* at 2.

In 2012, a Renaissance Schools Charter Application was submitted to the School District to operate the "John Paul Jones Middle School" as a charter school, and on May 16, 2012, the SRC authorized the issuance of a Charter to the Board of Trustees of MSA to operate MSA as a Renaissance charter school for a term of five years commencing on July 1, 2012. *Id.* at 1-2; Complaint, ¶ 37.[3] ("John Paul Jones Middle School" is MSA. All references herein and in the Complaint to MSA include "John Paul Jones Middle School" because they are one in the same.)

The Charter Schools Office ("CSO") is an office or department of the School District that is responsible for monitoring charter schools to support the School District's charter school oversight responsibilities. Complaint, ¶¶ 26-27. Part of the CSO's responsibilities is to conduct performance reviews of charter schools in order to recommend to the School District's governing board—formerly, the SRC and now the BOE —whether a charter school's charter should be renewed or nonrenewed at the end of its term, whether a charter should be revoked, or whether any conditions should be imposed upon a charter school. Complaint, ¶ 28. Under School District policy, the CSO makes recommendations regarding charter renewals based upon charter schools' academic performance, operational compliance, and financial health. Complaint, ¶ 29. To conduct the reviews necessary to make these recommendations, the CSO developed a framework to evaluate the performance of each charter school in Philadelphia; in the Complaint that framework is referred to as the Renewal Framework ("Framework"). Complaint, ¶ 30. The Framework consists of three domains:  academic success, organizational compliance and viability, and

---

[3] Under the CSL, a charter school operates under and pursuant to a Charter issued by its authorizing school district for a specified term of years, and the Charter may be renewed for one or more additional terms, or it may be revoked or nonrenewed by the chartering school district in accordance with the CSL. Complaint, ¶¶ 24-25.

financial health and sustainability. Under the Framework, a charter school will be recommended for nonrenewal only if it fails to meet standards in one or more of the three domains. Complaint, ¶¶ 31-32.

During the 2016-2017 school year, MSA applied to the School District for renewal of its charter agreement. Complaint, ¶ 41; Exhibit A to Complaint, p. 2. The CSO applied the Framework to evaluate MSA's renewal application, and it determined that MSA failed to meet standards for the academic success domain. Complaint, ¶ 42. Plaintiffs allege that the School District "threatened to nonrenew" MSA's charter unless it signed a new charter containing a Surrender Clause and certain academic performance conditions that if violated would trigger the Surrender Clause. Complaint, ¶ 43. In 2018, MSA signed the 2017 Charter that contains the Surrender Clause. Complaint, ¶ 45; Exhibit A to Complaint, at p. 41. The Surrender Clause contained in the 2017 Charter provides:

> The Charter School acknowledges and agrees that if any of the academic conditions including specific performance targets, set forth in Article I, Section I are not met fully by the Charter School, the Charter School will surrender and forfeit its charter and will close on or before June 30, 2022. The Charter School will dissolve without protest and without recourse to the State Charter School Appeal Board or to any court of competent jurisdiction. The Charter Schools Office will make a determination on whether any of the academic targets set forth above are not met fully by the Charter School once data for 2020-21 school year are available and made public.

Complaint, ¶ 44; Exhibit A to Complaint, p. 11 (Article I, Section I, Paragraph 15). The academic conditions referred to in the Surrender Clause called for MSA to substantially improve the academic performance of its students over the five-year charter renewal term ending as of June 30, 2022. Complaint, ¶ 46.

In 2021, MSA applied to the CSO for a renewal of its 2017 Charter. Complaint, ¶ 50. Plaintiffs allege that at some unspecified time the CSO "informed MSA of its intent to recommend

renewal of MSA's charter." Complaint, ¶ 53.a. Plaintiffs later allege, however, that on May 26, 2022, the CSO reported publicly to the BOE that MSA failed to meet the standards for academic success for the Framework and that MSA was in violation of conditions that triggered the Surrender Clause. Complaint, ¶ 54. On or about June 23, 2022, the BOE approved Action Item No. 89, under which it: (1) exercised the Surrender Clause contained in MSA's Charter; (2) demanded that MSA surrender and forfeit its Charter and close by June 30, 2023; and (3) directed MSA to notify the School District by July 15, 2022 whether it will comply with such demand. Complaint, ¶ 56. A copy of Action Item No. 89 is attached to the Complaint as Exhibit B.

On July 15, 2022, Plaintiffs commenced the instant action by filing a complaint. Plaintiffs filed an Amended Complaint (the operative Complaint) on August 11, 2022. ECF No. 7.

## III.   ARGUMENT

### 1.   Standard of Review

A defendant may file a motion to dismiss a complaint on the basis that the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In reviewing a motion to dismiss under Rule 12(b)(6), the court "accepts well-pleaded allegations and reasonable inferences as true and construes the complaint in the light most favorable to the non-moving party." *Thompson v. Horsham Township*, 576 F. Supp. 2d 681, 687 (E.D. Pa. 2008). However, the Court must dismiss the complaint if the plaintiff "does not plead all of the essential elements of his or her legal claim . . . ." *Edgar v. Avaya, Inc.* 503 F.3d 340, 349 (3d Cir. 2007).

In *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007), the United States Supreme Court clarified that a plaintiff must also assert more than labels and conclusions, and that a well-pleaded complaint must include facts that raise the right to relief above the "speculative level:"

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need
> detailed factual allegations, a plaintiff's obligation to provide the grounds of his

entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. ***Factual allegations must be enough to raise a right to relief above the speculative level***, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Id.* at 555-56 (emphasis added; internal citations omitted).  Moreover, the Court is not required to credit bald assertions or legal conclusions in a complaint.  *Centennial School District v. Phil L. ex rel. Matthew L.*, 559 F. Supp. 2d 634 (E.D. Pa. 2008).  In *Phillips v. County of Allegheny,* 515 F.3d 224 (3d Cir. 2008), the Third Circuit provided a framework for applying the *Twombly* decision:

> The Supreme Court's *Twombly* formulation of the pleading standard can be summed up thus: stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest the required element.  This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.

*Id.* at 234 (internal quotations and citations omitted).  Thus, while Fed. R. Civ. P. 8 calls for "a short and plain statement of the claim showing that the pleader is entitled to relief," the Third Circuit has specifically noted that the *Twombly* court called for pleading beyond a "speculative level" in order to meet the Rule 8's requirements:

> Context matters in notice pleading.  Fair notice under Rule 8(a)(2) depends on the type of case – some complaints will require at least some factual allegations to make out a "showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  Indeed, taking *Twombly* and the Court's contemporaneous opinion in *Erickson v. Pardus,* 551 U.S. 89 (2007), together, **we understand the Court to instruct that a situation may arise where, at some point, the factual detail in a complaint is so undeveloped that it does not provide defendant the type of notice of claim which is contemplated by Rule 8.**  Put another way, in light of *Twombly*, Rule 8(a)(2) requires a "showing" rather than a blanket assertion of an entitlement to relief.  We caution that without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only "fair notice," but also the "grounds" on which the claim rests.

*Phillips,* 515 F.3d at 232 (bold added; cleaned up).

## 2. The claims against the individual Defendants in their official capacities should be dismissed because those claims are duplicative of the claims against the School District.

The individual Defendants are listed in the caption (and *only* in the caption) as being sued in their official and individual capacities. The official capacity claims should be dismissed because they are duplicative of Plaintiffs' claims against the School District.

"[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent." *Hafer v. Melo,* 502 U.S. 21, 25 (1991) (internal quotation marks and citations omitted). "Suits against state officials in their official capacity therefore should be treated as suits against the State." *Id.* For that reason, the U.S. Court of Appeals for the Third Circuit has affirmed the dismissal of official-capacity claims against individual defendants where a plaintiff also sues their municipal employer. *See Cuvo v. DeBiasi,* 169 Fed.Appx. 688, 693 (3d Cir. 2006) (non-precedential); *see also Dawson v. Harran,* No. 08–7, 2008 WL 1959696, at *6 (E.D. Pa. May 5, 2008). Simply put, the official capacity claims against the individual Defendants are thus redundant of the Plaintiffs' claims against the School District. The Court should therefore dismiss with prejudice all claims against the individual Defendants in their official capacities. *See Gray v. Great Valley Sch. Dist.,* 102 .F. Supp. 3d 671, 679 (E.D. Pa. 2015).

## 3. The Complaint should be dismissed for its failure to comply with the pleading requirements of Rule 8

The Complaint is limited to conclusory allegations which do not include sufficient facts and do not raise the pleadings beyond mere speculation. The Complaint does not comply with Rule 8 and therefore should be dismissed.

Determining whether the allegations in a complaint are "plausible" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). If the "well-pleaded facts do not permit the

court to infer more than the mere possibility of misconduct," the complaint should be dismissed for failing to "show[ ] . . . that the pleader is entitled to relief." *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). Facial plausibility is present when a plaintiff pleads factual content that allows a court to draw the reasonable inference that a defendant is liable for the misconduct alleged. *Danieli Corp. v. SMS Grp., Inc.*, No. 2:21-CV-1716, 2022 WL 2542025, at *3 (W.D. Pa. Mar. 1, 2022), citing *Iqbal*, 556 U.S. at 678. Even if the complaint's well-pleaded facts lead to a plausible inference, that inference alone will not entitle a plaintiff to relief. *Id.* at 682. The complaint must support the inference with facts to plausibly justify that inferential leap. *Id.* The Complaint does not meet these requirements.

Plaintiffs allege three substantive claims. Plaintiffs claim first that the School District's use of the allegedly "discriminatory Renewal Framework" to evaluate MSA for renewal (and also the renewal of all other charter schools in Philadelphia) and its closure of MSA, would violate: (1) Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d; 34 C.F.R. Part 100; (2) Article I, Sections 26 and 29 of the Pennsylvania Constitution; and (3) Article III, Section 14 of the Pennsylvania Constitution (which charges the General Assembly to provide for the "maintenance and support" of a "thorough and efficient system of education"). (Complaint, ¶¶ 125, 131). Next, Plaintiffs claim that the School District's closure of MSA would violate the Supremacy Clause of the U.S. Constitution:  (1) because "it would be directly inconsistent with both the letter and spirit of the ESSA [Every Student Succeeds Act (20 U.S.C. § 1001, *et seq.*)] for a charter school designated as a TSI school [*i.e.*, a school in need of targeted support and improvement (Complaint, ¶ 100.c.)] to be forced or compelled, under color of law, to close before exhaustion of ESSA's mandatory process for support and intervention"; and (2) the ESSA's "accountability provisions" must "be overseen for charter schools in compliance with the state's charter school law." Complaint, ¶¶ 111, 136 (for the first reason); ¶ 139 (for the second reason). Finally, Plaintiffs

contend that the School District's closure of MSA through the Surrender Clause would "violate Federal and Commonwealth of Pennsylvania Constitutional due process and the CSL." Complaint, ¶ 144.

Plaintiffs' pleading deficiencies pertain to the first two of the three groups summarized above. The third group of claims is resolved in favor of the School District under an analysis of the unambiguous language of MSA's 2017 Charter. That discussion follows the discussion of the pleading deficiencies.

### a. Allegations regarding academic performance standards and race

Plaintiffs' pleadings do not come close to providing enough factual matter to make a plausible showing that the School District's use of the Framework constitutes intentional discrimination under Title VI. "[I]t is . . . beyond dispute . . . that § 601 [*i.e.*, 42 U.S.C. § 2000d] prohibits only intentional discrimination." *Alexander v. Sandoval*, 532 U.S. 275, 280 (2001).

In Paragraph 33 of the Complaint, Plaintiffs allege, "[f]or reasons discussed below, the academic success domain of the Renewal Framework is heavily biased against certain racial minority groups." But Plaintiffs never provide the "reasons" supporting its unfounded allegation. They allege—in paragraphs 57-61 in a conclusory fashion—only that MSA's *student population* consists of a slightly higher percentage of Hispanic and African American students than the School District's student population. Plaintiffs do not cite to any data or evidence that shows, or that could be construed as tending to show that the Framework is "heavily biased against certain racial minority groups."

Plaintiffs continually make conclusory pleadings that are unsupported by data or evidence. In paragraph 36 of the Complaint, Plaintiffs contend the Framework is "unfair and [imposes] unrealistic charter conditions.  In paragraph 49, Plaintiffs allege the academic conditions imposed

upon MSA by the 2017 Charter were "unrealistic and unreasonable." There are numerous other instances of deficient pleadings in the Complaint, including the following:

- "The CSO's Renewal Framework discriminatorily targets for closure charter schools which serve disproportionately high percentages of students from racial minorities." Complaint, ¶ 57. There are no allegations or data supporting this conclusory allegation.

- "Thus, . . . in imposing conditions upon MSA and now demanding that MSA surrender its charter and close, SDP has demonstrated an intent to employ against MSA accountability data and metrics that systemically target for school closure charter schools with disproportionately high percentages of students who are members of racial minorities." Complaint, ¶ 58. There are no allegations or data indicating whether and how the accountability data and metrics used by the District systemically targets for closure schools with high percentages of students who are members of racial minorities.

- "Over the past several years, SDP has consistently and disproportionately nonrenewed and/or revoked the charters of charter schools which have served student populations with higher percentages of students from racial minorities than the overall student population of SDP, causing real and substantial harm to their students." Complaint, ¶ 64. Plaintiffs provide no data or evidence in support of this claim. And this is a key failure, because Plaintiffs' discrimination claim is based upon how the School District allegedly handled the charters of other charter schools that have higher percentages of students from racial minorities than the School District does. *See also*, Complaint, ¶ 68.

- "In closing [other, unspecified] schools, SDP has caused real and substantial harm to their students . . . ." Complaint, ¶ 65. Yet Plaintiffs do not specify the harm experienced, and they do not allege any particular harm to themselves.

- "The Renewal Framework is heavily weighted by data and metrics for which Hispanic and African American students materially underperform other student groups. The Renewal Framework is thus biased against charter schools which educate high proportions of Hispanic and African American students." Complaint, ¶ 69. Plaintiffs do not provide any allegations or data to support their conclusions that the Framework is heavily weighted by data and metrics for which Hispanic and African American students materially underperform other student groups. They also do not provide allegations or data to support their conclusion that the Framework is biased against the category of charter schools that Plaintiffs mention.

- "The Renewal Framework is heavily weighted by data and metrics for which [English Language Learners ("ELL")] materially underperform other student groups. The Renewal Framework is thus biased against schools which educate high proportions of ELL students [like charter schools in general and MSA in particular]." Complaint, ¶ 92. Plaintiffs provide no data, evidence, or well-pleaded facts to support these allegations.

- "Upon information and belief,[4] SDP is **fully aware** that the Renewal Framework is materially skewed against charter schools which serve disproportionately high percentages of Hispanic and African American students." Complaint, ¶ 93. However, Plaintiffs do not

---

[4] As for allegations based upon "information and belief," in *McDermott v. Clondalkin Grp., Inc.*, 649 F. App'x 263, 267–68 (3d Cir. 2016), the Third Circuit permitted such pleadings, but it did so only by citing precedent explaining that pleading upon information and belief is permissible "[w]here it can be shown that the requisite factual information is peculiarly within the defendant's knowledge or control"—so long as there are no "boilerplate and conclusory allegations " and "[p]laintiffs . . . *accompany their legal theory with factual allegations that make their theoretically viable claim plausible.*" (Italics added.) Here, Plaintiffs are trying to establish the School District's intent (or to at least make a plausible showing of the District's intent)—because intent is a requirement for showing intentional discrimination—by alleging the District's intent in a conclusory fashion. Such a pleading is not permitted under Rule 8.  The plaintiff in *McDermott*, to the contrary, was permitted to allege based upon information and belief because he was alleging how the defendant breached a contract. *Id.* at 268.

cite to any data or evidence or provide any well-pleaded facts to support their conclusion that the School District is fully aware of how the Framework is "skewed" against certain charter schools.

These and similar allegations in the Complaint are conclusory, baseless, and are not supported with sufficient specific information to make a plausible showing that the School District's use of the Framework constitutes intentional discrimination. And these allegations, in substance, constitute the gamut of Plaintiffs' allegations regarding intentional discrimination. For these reasons, Plaintiffs' claims of intentional discrimination should be dismissed.

**b.   Allegations alleging violation of the Pennsylvania Constitution**

Many of the pleading failures referred to above also apply to and preclude Plaintiffs' claims of discrimination under the Pennsylvania Constitution. Notably, Plaintiffs never state or specifically allege which actions of the School District violated Article I, Sections 26 and 29 of the Pennsylvania Constitution.

Plaintiffs also make claims under the Pennsylvania Constitution pertaining to an apparent "violation of the public interest." Complaint, ¶ 114-120. These claims also fail to meet the pleading requirements of Rule 8. In Paragraph 116, Plaintiffs' pattern of conclusory allegations continues. Plaintiffs allege that "SDP's threatened closure of MSA would violate [the] public interest [in a thorough and efficient system of education] by being premised upon a discriminatory charter school performance framework and constituting part of a discriminatory pattern of SDP through which charter schools serving disproportionately high rates of students from minority groups have been subject to closure." Complaint, ¶ 116. These additional pleading failures—a continued improper pleading of conclusory allegations without factual content that allows a court to draw the

reasonable inference that a defendant is liable for the misconduct alleged—merits a dismissal of Plaintiffs' claims under the Pennsylvania Constitution. *Danieli Corp.*, 2022 WL 2542025, at \*3.

### c. The individual Defendants, sued in their individual capacities, should be dismissed from the case because no substantive allegations are made against them.

To survive a motion to dismiss, a plaintiff must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). The complaint must contain "factual content that allows the court to draw the reasonable inference that the defendant[s are] liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Twombly,* 550 U.S. at 556).  There are *no allegations* in the Complaint pertaining to the actions or inactions of the individual Defendants. Plaintiffs only offer an exceedingly broad, conclusory allegation in paragraph 3, which contains no detailed fact allegations. And at no point do Plaintiffs either allege that the individual Defendants did anything to harm them or ask the Court to provide Plaintiffs any relief from the individual Defendants. Plaintiffs' failures to make allegations particular to any individual Defendant prevent the Court from concluding that the Complaint states claims to relief against those persons that are plausible on their face. Plaintiffs' failures also prevent the Court from concluding that the Complaint contains factual content that might allow the Court to draw reasonable inferences that these individual defendants may be liable for the alleged misconduct. Accordingly, the claims against the individual Defendants must be dismissed with prejudice.

### 4.  The Individual Defendants possess qualified immunity from all claims.

The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Qualified immunity balances two important interests—

the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. The protection of qualified immunity applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Groh v. Ramirez,* 540 U.S. 551, 567 (2004) (Kennedy, J., dissenting) (quoting *Butz v. Economou,* 438 U.S. 478, 507 (1978).) Because qualified immunity is "an immunity from suit rather than a mere defense to liability . . . it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985). *See also Hunter v. Bryant,* 502 U.S. 224, 227 (1991) *(per curiam)* (stressing the importance of resolving immunity questions at the earliest possible stage in litigation).

The U.S. Supreme Court has held that school administrators are entitled to qualified or "good faith" immunity from suits arising under 42 U.S.C. § 1983.[5] *See e.g.*, *Wood v. Strickland*, 420 U.S. 308 (1975), overruled on other grounds, *Harlow v. Fitzgerald*, 457 U.S. 800 (1982). A school board member would lose his immunity from a § 1983 suit only if "he knew or reasonably should have known that the action he took within his sphere of official responsibility would violate . . . constitutional rights . . . or if he took the action with the malicious intention to cause a deprivation of constitutional rights or other injury . . . ." *Butz v. Economou*, 438 U.S. 478, 498 (1978). In short, "[a] government official is entitled to qualified immunity if his 'conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would

---

[5] Defendants make this point while noting later in this memorandum that the Complaint was not brought under Section 1983; in theory, it should have been; and even if it were, an action under Section 1983 against the School District would be improper, because MSA is not permitted to bring a claim under Section 1983 against its creator, the School District. See pages 16-18 below.

have known.' " *Berg v. County of Allegheny*, 219 F.3d 261, 272 (3d Cir. 2000) (quoting *Harlow*, 457 U.S. at 818).

In *Saucier v. Katz*, the Supreme Court established a two-step process for courts examining the qualified immunity of government officials. 533 U.S. 194 (2001). "First, a court must decide whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (citing *Saucier*, 533 U.S. at 201). "Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Id.*

Plaintiffs make no fact allegations about what the individual Defendants allegedly did to violate any of their state or federal statutory or constitutional rights. Therefore, Plaintiffs have failed not only to make out a violation of a statutory or constitutional right, but they have also failed to allege that any right violated was clearly established such that the Defendants understood that they were violating those rights. Accordingly, the individual Defendants are entitled to qualified immunity, and the Court must dismiss the claims made against them.

### 5. The Complaint is without appropriate statutory support.

"To seek relief under the United States Constitution, a plaintiff must utilize the vehicle of a claim under 42 U.S.C. § 1983 and may not assert claims for relief under the United States Constitution directly." *Providence Pediatric Med. Day Care, Inc. v. Alaigh*, 112 F. Supp. 3d 234, 247 (D.N.J. 2015), citing *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906–07 (3d Cir.1997) ("By itself, Section 1983 does not create any rights, but provides a remedy for violations of those rights created by the Constitution or federal law."). This requirement serves as a death-knell for Plaintiffs' claims because the Complaint asserts claims under the U.S. Constitution (i.e., claims of a Supremacy Clause violation and for deprivation of due process), and the Complaint is not brought

under Section 1983 (*see* Complaint, ¶¶ 5-6). As explained below, even if the Complaint were brought under Section 1983, it would fail because a charter school entity may not bring a cause of action under Section 1983 against its creator, the School District.

### 6. Even if the Complaint were brought under 42 U.S.C. § 1983, MSA cannot sue the School District under Section 1983.

#### a. MSA cannot sue the School District under Section 1983.

A charter school is granted the limited power to operate an independent public school.  24 P.S. § 17-1702-A. It can only operate "under a charter from the local board of school directors." 24 P.S. § 17-1703-A. Thus, the "legal authorization for the establishment of a charter school" is pursuant to a written charter that must be signed by the local board of school directors. *See* 24 P.S. § 17-1720-A(a). A charter school is thus an entity analogous to a municipal corporation where the powers granted to the municipal corporation are defined and limited by its creator. *Pocono Mountain Charter School v. Pocono Mountain School Dist.,* 908 F.Supp.2d 597, 611-12 (M.D. Pa. 2012) (containing more complete analysis of the school district/charter school relationship). "The charter school, therefore, like a municipality or municipal corporation, may not bring a constitutional challenge under Section 1983 against its creator, the school district." *Id.* at 612; *see also Nw. Sch. Dist. v. Pittenger,* 397 F.Supp. 975, 979 (W.D. Pa. 1975) ("a municipal corporation created by a State for the better ordering of government has no rights under the United States Constitution which it may invoke in opposition to the will of its creator."). Supporting that conclusion are the decisions of courts that have allowed a municipality or municipal corporation to assert claims against its creator *only* for violations of the Supremacy Clause. *See e.g., Branson Sch. Dist. RE-82 v. Romer,* 161 F.3d 619, 629 (10th Cir. 1998). But now, even those decisions would not support the bringing of claims of Supremacy Clause violations. In 2015, the U.S. Supreme Court held in *Armstrong v. Exceptional Child Center, Inc.,* 575 U.S. 320 (2015), that  the

Supremacy Clause creates only a rule of decision that federal law prevails over conflicting state law, and it does not confer a private right of action. Accordingly, even if MSA could succeed in stating cognizable Supremacy Clause claims pursuant to Section 1983, the Court would be required to dismiss them along with any other Section 1983 claims because MSA has no authority to obtain relief against its creator under Section 1983.[6]

### b. There is no Supremacy Clause violation for the nonrenewal or surrender of MSA's Charter.

Plaintiffs do not contend they have a right of action under the ESSA. They merely allege instead that the ESSA exists; that it contains certain provisions that impose certain requirements; that the actions taken by (or that might be taken by) the School District allegedly "violate" the ESSA; and the Supremacy Clause prevents the School District's possible actions because the ESSA's provisions must control. In essence, Plaintiffs are presenting a claim under and pursuant to the Supremacy Clause. This is not permissible. In 2015, the Supreme Court held that the Supremacy Clause does not provide a private right of action. *Armstrong v. Exceptional Child Center, Inc.,* 575 U.S. 320 (2015). In *Armstrong,* the Court stated that the Supremacy Clause is not the "source of any federal rights," but rather "[it] instructs courts what to do when state and federal law clash[.]" *Id.* at 324. The Court further noted that the Supremacy Clause "is silent regarding who may enforce federal laws in court, and in what circumstances they may do so." *Id.* at 325. For this reason alone, Plaintiffs' claims under the Supremacy Clause should be dismissed.

---

[6] This Court has also recognized that a school district does not have standing to sue under Section 1983 because it is not a "person" that can sue under Section 1983. *See Sch. Dist. of Phila. v. Pa. Milk Mktg. Bd.,* 877 F.Supp. 245, 248 (E.D. Pa. 1995). In the above referenced *Pocono Mountain Charter School* case, however, the Middle District came down the other way and found that a charter school did have standing to sue under Section 1983 but could not sue its creator.

Nonetheless, should the Court disagree, Plaintiffs' Supremacy Clause claim should be dismissed because it is incorrect as a matter of law. Plaintiffs' own allegations bear that out. Plaintiffs' discussion of the ESSA describes how the law provides the States, including the Commonwealth of Pennsylvania, with enhanced flexibility to designate and serve schools in need of support. Complaint, ¶ 98-111. In connection with ESSA, Pennsylvania's Department of Education ("PDE") designates public schools that need support as either: (1) needing Targeted Support and Improvement, (2) needing Additional Targeted Support and Improvement, or (3) needing Comprehensive Support and Improvement. Complaint, ¶ 100. MSA is currently designated by PDE as needing Targeted Support and Improvement. Complaint, ¶ 108.

MSA alleges in a conclusory fashion that "ESSA's mandatory process for the support and improvement of [TSI] schools reflects a clear policy decision to support and intervene schools [sic] rather than simply closing them." Complaint, ¶ 110. MSA provides no factual support for this contention; it is instead being weaponized in this lawsuit to conjure up a non-existent Supremacy Clause claim. ESSA does not *require* schools that receive support to continue to exist so they can continue to receive supports. Instead, in the context of charter schools, a charter school in support status will continue to receive support, if permitted by PDE in accordance with ESSA, *as long as that school exists under the CSL*. ESSA does not address or dictate the grounds under which a charter (in any of the fifty States) can be revoked, non-renewed or surrendered—the State laws in the applicable State do that. And MSA itself recognizes this fact in Paragraph 139 of the Complaint when it acknowledges that the ESSA has a "requirement" that the "accountability provisions under this chapter shall be overseen for charter schools in compliance with a state's CSL." It thus follows that if a charter school is closed "in compliance with [Pennsylvania's] CSL" while the school is in support status, then the ESSA is not offended in any way.

7.  **The Surrender Clause in the 2017 Charter is valid as a matter of law, and it forecloses MSA's due process claims.**

In paragraphs 152 through 154 of the Complaint, MSA alleges that the Surrender Clause in MSA's signed 2017 Charter agreement is "illegal and unenforceable." MSA also alleges in conclusory fashion that the "academic performance conditions" in the 2017 Charter are "inconsistent with the CSL" because they "impose unrealistic academic performance requirements." *Id.* and ¶ 36, 50.

The Surrender Clause is clear, unambiguous, valid, and enforceable. When MSA signed the 2017 Charter, MSA agreed to abide by the Surrender Clause and to waive its rights to an appeal should certain events happen in the future. Those events have now happened, but MSA refuses to comply with the Surrender Clause and the agreements that MSA made when it signed the 2017 Charter. The parties entered into a legally binding agreement, with which the School District expects MSA will comply.

According to the Pennsylvania Supreme Court, terms included in written charters entered into between school districts and charter schools pursuant to the CSL are valid and enforceable. *School Dist. of Philadelphia v. Department of Educ.*, 92 A.3d 746, 747-748 (Pa. 2014). The legally binding nature of the terms of charters is mandated by Section 1720-A of the CSL, *id.* at 749, which states as follows:

> (a) Upon approval of a charter application under section 1717-A, a written charter *shall be developed* which shall contain the provisions of the charter application and which shall be signed by the local board of school directors of a school district . . . and the board of trustees of the charter school.  This written charter, *when duly signed by the local board of school directors . . . and the charter school's board of trustees*, shall act as legal authorization for the establishment of a charter school. *This written charter shall be legally binding on both the local board of school directors of a school district and the charter school's board of trustees.* Except as otherwise provided in subsection (b), the charter shall be for a period of no less than three (3) nor more than five (5) years and may be renewed for five (5) year periods

upon reauthorization by the local board of school directors of a school district or
the appeal board.

24 P.S. § 17-1720-A(a) (italics added). The italicized portions of the statutory language above
reflect the importance of the charter language and terms that are developed between the parties,
and the expectation that the written charter ultimately entered into and signed by both parties is
legally binding.

The Pennsylvania Supreme Court in *School Dist. of Philadelphia* addressed arguments
raised by Walter D. Palmer Leadership Learning Partners Charter School ("Palmer"), suggesting
that Palmer had not agreed to a particular term in its charter, in that case an enrollment cap
provision. Palmer contended that the School District unilaterally placed the enrollment cap in its
charter without its agreement, such that the enrollment cap was not enforceable against it. *Sch.
Dist. of Philadelphia*, 625 Pa. at 426, 92 A.3d at 751. Rejecting Palmer's argument, the Court
identified the characteristics of the language in Palmer's charter that reflected the clear intention
of Palmer and the School District to reach a legally binding and mutual agreement. *Id.,* 625 Pa. at
421, 92 A.3d at 748-49 (quoting provisions from charter indicating parties' intention to be legally
bound by the charter and that the charter contains the agreement of the parties).

Like Palmer, MSA is trying to avoid enforcement of a term contained in the 2017 Charter
that it agreed to and signed. Its attempts to do so must be rejected for the same reasons found by
the Supreme Court with Palmer. Although the provision at issue with Palmer was different from
the provision at issue with MSA, the legal considerations and analyses are the same. Much like the
Palmer charter, MSA's 2017 Charter contains language that reflects the parties' agreement to terms
and conditions set forth in writing in the 2017 Charter, which was signed by the Chairman of
MSA's Board of Trustees in 2018, and subsequently approved and signed by the School District.
*See* Exhibit A to Complaint (final "Whereas" clause on page 2; "Now Therefore" clause on page

2; Article I, Sections B, G.1., G.2., I (first paragraph), and I.15.; Article IV, Section A; and Article XVIII, Sections A, I, and J.

There is no dispute noted in the Complaint (and there can be no dispute) that MSA signed the 2017 Charter containing the Surrender Clause. *See* Exhibit A to Complaint at its numbered page 41. By doing so, MSA expressly agreed to all the terms and conditions found in the 2017 Charter, including the Surrender Clause. MSA further represented to the School District in Article I that the Charter "shall be a valid and binding obligation of the Charter School, enforceable in accordance with its terms." Exhibit A to Complaint, p. 5 (Article I, Section G.2.). The Court need look no further than the 2017 Charter itself to determine there was a legally binding agreement. The Pennsylvania Supreme Court's determination with respect to the Palmer charter applies equally here:

> The Charter School's arguments to the contrary lack merit. The Charter School's contention that the enrollment cap was somehow unilaterally imposed without its consent, acquiescence, or agreement is belied by the straightforward text of the 2005 Charter, a "legally binding agreement" signed by the Charter School. * * * The Charter School's enrollment of more students than permitted by the cap shows only that the Charter School intentionally failed to abide by the legally binding agreement that it had signed. The Charter School's further contention that a charter is not an agreement is similarly belied by the text of the 2005 Charter.

*School Dist. of Philadelphia*, at 752-753 (cleaned up).

MSA agreed to waive its rights to appeal in various enumerated instances when it elected to sign the 2017 Charter. One who waives the judicial process may not claim due process is denied. *Holland v. Rosen*, 277 F. Supp. 3d 707, 744 (D.N.J. 2017), *aff'd*, 895 F.3d 272 (3d Cir. 2018); *see also Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000) ("In order to state a claim for failure to provide due process, a plaintiff must have taken advantage of the processes that are available to him or her."). If there is a process on the books that provides due process, the plaintiff cannot skip that process and use the federal courts as a means to get back what it wants. *McDaniels*

*v. Flick,* 59 F.3d 446, 460 (3d Cir.1995), *citing Suzuki*, 227 F.3d at 116. MSA, therefore, cannot claim a due process violation because it has agreed not to avail itself of process in exchange for consideration—in this case, its receipt of a renewal charter for the period of July 1, 2017 through June 30, 2022.

### a. The Surrender Clause does not violate the CSL or public policy.

MSA alleges in the Complaint that the Surrender Clause violates the CSL because it violates public policy. Complaint, ¶ 114-120. This position is legally unsustainable. A litigant—especially a sophisticated party like MSA—is capable of agreeing to waive its appellate rights through a written agreement. A charter school that is not renewed is not required to exercise its appeal rights or file an appeal to the State Charter School Appeal Board ("CAB"). The CSL does not contain any provisions that would preclude the inclusion of the Surrender Clause in the charter. A charter school that has had its charter not renewed by a local board of school directors may elect to appeal the decision to CAB, but is not required to do so: "Following the appointment and confirmation of the appeal board . . . *the charter school may appeal the decision* of the local board of school directors to revoke or not renew the charter to the appeal board." 24 P.S. § 17-1729-A(d) (italics added). There is no articulated public policy in Pennsylvania that every charter school must appeal to CAB following a nonrenewal.

Further, a charter school may voluntarily surrender its charter or cease to operate at any time, which is also permissible under the CSL: "When a charter is revoked, not renewed, forfeited, *surrendered* or otherwise ceases to operate, the charter school shall be dissolved." 24 P.S. § 17-1729-A(i) (italics added). In light of that language, the General Assembly clearly contemplated the concept of charter surrender. A charter school that surrenders its charter does not have any right to appeal to CAB, because CAB only has exclusive jurisdiction over nonrenewal or revocation

decisions by a local school board. 24 P.S. § 17-1729-A(d). Surrendering a charter means that an entity is voluntarily agreeing to give up its charter and cease operating, just like the language in Article I, Section I, Paragraph 15 of the 2017 Charter requires. Exhibit A, p. 11 of the charter. And the CSL permits that to happen.

Notwithstanding the lack of policy supporting MSA's position, the Pennsylvania Supreme Court's decision in *School Dist. of Philadelphia*, discussed above, definitively articulates how a school district and a charter school can reach an enforceable agreement in a legally binding charter to terms and conditions that may differ or go beyond what is set forth in the CSL. The CSL does not limit what conditions can be placed in charters, as long as those conditions are ultimately agreed to by the parties, as evidenced by the execution of the charter by both parties.

For these reasons, the claim that the Surrender Clause violates Pennsylvania law or applicable public policy must be rejected and dismissed.

### 8. The claims of the individual Plaintiffs should be dismissed because those persons lack standing.

"The Constitution, Art. III, § 2, limits the federal judicial power to the resolution of 'cases and controversies.'" *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.,* 399 F.3d 248, 254 (3d Cir. 2005). "One element of the case-or-controversy requirement is that plaintiffs must establish that they have standing to sue." *Id.* "The Supreme Court has held that the 'irreducible constitutional minimum' of standing under Article III requires a plaintiff to establish three elements:  an injury in fact . . . ; a causal connection between the injury and the conduct complained of; and substantial likelihood of remedy—rather than mere speculation—that the requested relief will remedy the alleged injury in fact." *Pa. Prison Soc'y v. Cortés,* 508 F.3d 156, 160–61 (3d Cir. 2007) (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555 (1992)) (emphasis in original). An injury-in-fact "is an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or

imminent, not conjectural or hypothetical . . . ." *Danvers Motor Co. v. Ford Motor Co.,* 432 F.3d 286, 290–91 (3d Cir. 2005).

The individual Plaintiffs do not make any allegations that the actions of the School District caused them any cognizable injury. They are not parties to the 2017 Charter. While the individual Plaintiffs, as parents of MSA students, may "desire" to have their children "continue to be educated at MSA," Complaint, ¶¶ 9-11, that is not a cognizable injury because MSA is currently operating, and the School District is only seeking MSA to close "by June 30, 2023." Exhibit B to Complaint. Therefore, the Parents cannot allege that they have been injured by any actions of the School District, because their children continue to be educated at MSA. *See I-Lead Charter Sch.-Reading v. Reading Sch. Dist.*, No. CV 16-2844, 2017 WL 2653722, at *3 (E.D. Pa. June 20, 2017) (parents lacked standing because they lacked injury and their children continued to be educated at the school at issue). In addition to the their lack of injury in fact, such parents clearly lack standing under the claims brought in the Complaint, as they are not recipients of federal funding (as they must be under ESSA); they are not a charter school (as they must be in connection with MSA's claims of discrimination against itself and charter schools or with bringing claims under the CSL); they are not party to the Charter; and their children are not being expelled from MSA. To the contrary, the closure of MSA would occur in accordance with the CSL and its 2017 Charter and the school as a whole would cease to exist.

## IV.    CONCLUSION

For the reasons given above, all Defendants respectfully request the Court to grant their Motion to Dismiss and dismiss all claims against them with prejudice.

Respectfully submitted,

_/s/ Allison S. Petersen_
Allison S. Petersen (PA 86335)

25

Paul J. Cianci (PA 82717)
David W. Brown (PA 201553)
LEVIN LEGAL GROUP, P.C.
1800 Byberry Road, Suite 1301
Huntingdon Valley, PA 19006
Phone:  (215) 938-6378
apetersen@levinlegalgroup.com
pcianci@levinlegalgroup.com
dbrown@levinlegalgroup.com
*Attorneys for All Defendants*

Dated: September 8, 2022

## <u>CERTIFICATE OF CONFERENCE WITH COUNSEL</u>

I, Paul J. Cianci, counsel for all Defendants, certify that commencing on August 4, 2022 and continuing on August 25, 2022 (after the filing of the First Amended Complaint), I met and conferred with David Annecharico, Esquire, and his colleague, David Hussey, Esquire, counsel for the Plaintiffs in this matter, regarding the pleading deficiencies noted in the foregoing Motion to Dismiss. I submit this certification pursuant to Judge Kenney's Policies and Procedures for Counsel, updated and effective as of July 19, 2022.

Respectfully submitted,

_/s/ Paul J. Cianci_

Paul J. Cianci
LEVIN LEGAL GROUP, P.C.
_Attorneys for All Defendants_

Dated: September 8, 2022

## **CERTIFICATE OF SERVICE**

I certify that on the below date I electronically filed the foregoing Defendants' Motion to Dismiss Amended Complaint, accompanying memorandum of law, exhibit and proposed form of order and that these documents are available for viewing and downloading from the ECF system and by all counsel of record.


_/s/ Paul J. Cianci_

Paul J. Cianci
LEVIN LEGAL GROUP, P.C.
_Attorneys for All Defendants_

Dated: September 8, 2022