# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MEMPHIS STREET ACADEMY CHARTER SCHOOL AT J.P. JONES** *et al*, | : : : : : : | **CIVIL ACTION** |
| *Plaintiffs,* | : : | |
| v. | : : | No.   22-02760 |
| **SCHOOL DISTRICT OF PHILADELPHIA** *et al*, *Defendants.* | : : : : | |

## MEMORANDUM

**KENNEY, J.**                                                                                  **November 29, 2022**

Before the Court is Defendants' Motion to Dismiss the Amended Complaint for Failure to State a Claim (ECF No. 13).

**I.   BACKGROUND**

Memphis Street Academy Charter School at J.P. Jones (hereinafter "MSA") describes itself as a nonprofit corporation that operates a charter school in Philadelphia. ECF No. 1 ¶ 8. This public charter school operates pursuant to a written charter agreement with the School District of Philadelphia (hereinafter "SDP'). ECF No. 7. A school charter is valid for a specified number of years and is evaluated for renewal, nonrenewal, or revocation at the end of its term. *See* 24 P.S. §§ 17-1701-A; ECF No. 7 ¶¶ 25-26. MSA claims that the SDP and individually named Defendants have initiated action to terminate the charter held by MSA and compel MSA to close. ECF No. 7 ¶ 1.

1

On July 15, 2022, Plaintiffs MSA and individual Plaintiffs[1] brought their initial Complaint against Defendant SDP primarily to prevent the closure of its charter school and alleging violations of Title VI of the Civil Rights Act of 1964, Every Student Succeeds Act, the Fourteenth Amendment of the Constitution, the Pennsylvania Constitution, and Pennsylvania Law. ECF No. 1. On August 11, 2022, Plaintiffs filed an Amended Complaint adding Defendants employed by the SDP or the Philadelphia Board of Education (collectively "individual Defendants").[2] ECF No. 7. In their Amended Complaint, Plaintiffs allege violations of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 200d; Every Student Succeeds Act, 20 U.S.C. ch. 28 §§ 1001, et seq; the Due Process and Equal Protection Clauses of the Fourteenth Amendment of the United States Constitution; 42 U.S.C. § 1983; Article I, Sections 11, 14, 26, 29 of the Pennsylvania Constitution, Pa. Const. art. I, §§ 11, 14, 26, and 29, and Pennsylvania state law. *Id*. ¶ 2. Additionally, Plaintiffs allege the individual Defendants, acting under color of Pennsylvania law, subjected Plaintiffs to unlawful discrimination and deprived them of due process and equal protection rights. *Id*. ¶ 3. Plaintiffs seek injunctive and declaratory relief.

In 2012, MSA was granted an initial charter of five years. ECF No. 7 ¶ 37. In 2017, MSA applied for renewal of its charter. *Id*. ¶ 41. Plaintiffs outline the alleged process for reviewing a school's charter. The SDP Charter Schools Office is purportedly responsible for conducting performance reviews of charter schools. ECF No. 7 ¶¶ 27-29. The Charter Schools Office uses

---

[1] Plaintiffs Patrice Rogers, Nicauris Estevis, and Jennifer Bermudez filed suit on their own behalf and on behalf of their minor children who are students at MSA.

[2] The individual Defendants are Tony B. Watlington, Superintendent of the SDP, Joyce Wilkerson, President of the Philadelphia Board of Education, Leticia Egea-Hinton, Vice-President of the Philadelphia Board of Education, Sarah Ashley-Andrews, member of the Philadelphia Board of Education, Julia Danzy, member of the Philadelphia Board of Education, Chau Wing Lam, member of the Philadelphia Board of Education, Mallory Fix Lopez, member of the Philadelphia Board of Education, Lisa Salley, member of the Philadelphia Board of Education, Reginald Streater, member of the Philadelphia Board of Education, Cecelia Thompson, member of the Philadelphia Board of Education, and Peng Chao, Acting Chief of the SDP's Charter Schools Office. ECF No. 7.
The Named Defendants are sued in their official and individual capacity.

an evaluation framework, referred to as the Renewal Framework, that consists of standards in academic performance, operational compliance, and financial health. ECF No. 7 ¶¶ 30-31. Plaintiffs allege that the Charter Schools Office will recommend for five-year renewal schools that approach or meet their standards in those three areas. *Id*. ¶ 32. Schools who do not satisfy the Renewal Framework in one or more area will be considered for nonrenewal. *Id*.

In 2018, the Charter Schools Office applied the Renewal Framework to MSA and found the school had failed to meet the academic success standard. *Id*. ¶ 42. Despite that failure to meet the criteria for charter schools, MSA negotiated and signed a new charter that included specific academic conditions and a clause to surrender its charter if these conditions were not met. *Id*. ¶¶ 43-44. In 2021, MSA applied for renewal of its charter and again failed to meet the academic success standard of the Renewal Framework. *Id*. ¶¶ 52, 54. The Charter Schools Office allegedly reported to the Philadelphia Board of Education that MSA had triggered its Surrender Clause. *Id*. On June 23, 2022, the Philadelphia Board of Education approved the recommendation and invoked the Surrender Clause in MSA's charter. The Philadelphia Board of Education then directed MSA to forfeit its charter and close by June 30, 2023. *Id*. ¶ 56. MSA was instructed to notify SDP of its intent to comply with the Surrender Clause by July 15, 2022. *Id*.

The Renewal Framework should not be the criteria for charter renewal, Plaintiffs allege, because it is racially biased against minorities and English Language Learners. *Id*. ¶¶ 33-36. According to reports generated by the Charter Schools Office, the student population at MSA from 2020 to 2021 had a higher percentage of Hispanic and African American or black students than the general student population of the SDP. *Id*. ¶¶ 59-60. Plaintiffs claim that the SDP disproportionately selects nonrenewal or revocation of charters from schools that have higher percentages of racial minorities. *Id*. ¶ 64. Since Hispanic and African American or black students

underperform on academic success metrics, which constitute one of only three criteria in the Renewal Framework, Plaintiffs allege that the Renewal Framework is racially biased. *Id*. ¶¶ 68-74. Plaintiffs also point out that racial demographics are not a factor in evaluating a school's charter. MSA, according to Plaintiffs, helps students performing below grade level at SDP public schools and that the Renewal Framework fails to account for demonstrated improvement in academic growth. *Id*. ¶¶ 76-80. Plaintiffs also claim that the Renewal Framework fails to account for English Language Learners and students with disabilities. *Id*. ¶¶ 91-97.

Plaintiffs assert that the closure of MSA also violates the Every Student Succeeds Act ("ESSA"). *Id*. ¶ 98. States that receive federal funding under the ESSA must develop certain practices that include identifying schools in need of support. *Id*. ¶ 100. Plaintiffs allege that the ESSA does not recommend closure of a school until it has failed to meet certain exit criteria after four years, and MSA's closure would violate the ESSA. *Id*. ¶¶ 106, 109.

Plaintiffs further claim that revocation of MSA's charter violates public interest in fair and equitable education because, *inter alia*, the Renewal Framework is discriminatory, and SDP has no plan for MSA students post-closure. *Id*. ¶¶ 116, 117-120. SDP is also attempting, according to Plaintiffs, to impose an illegal and unenforceable agreement by triggering the Surrender Clause in MSA's charter. *Id*. ¶¶ 122-124.

Defendants' move to dismiss the Amended Complaint for failure to state a claim upon which relief may be granted. ECF No. 13. Procedurally, Defendants seek to dismiss the claims against the individual Defendants in their official capacities as duplicative and in any capacity due to qualified immunity, as well as the claims brought by the individual Plaintiffs for lack of standing. Defendants also seek to dismiss all claims for failure to include sufficient facts beyond mere speculation or the mere possibility of misconduct. Furthermore, Defendants allege that the

complaint is either without appropriate statutory support or was brought inappropriately under 42 U.S.C. § 1983. Finally, Defendants assert that the Surrender Clause in the 2017 Charter is valid as a matter of law and precludes MSA's claims of due process violations.

On September 26, 2022, Plaintiffs filed their Response in Opposition, while acknowledging that some of their claims are insufficiently plead. ECF No. 16. On October 11, 2022, Defendants filed their Reply reiterating their positions in the motion to dismiss and responding directly to some of Plaintiffs' arguments in its Response. ECF No. 28. On October 20, 2022, Plaintiffs filed a Sur-Reply addressing the scope of the Surrender Clause, standing under Section 1983, and brief arguments related to the Title VI claim, discrimination claim, and public interest. ECF No. 29.

## II.     STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for dismissal of a complaint or a portion of a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) tests "the sufficiency of the allegations contained in the complaint." *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993) (citation omitted). The Court will grant a motion to dismiss if the factual allegations do not "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Zuber v. Boscov's*, 871 F.3d 255, 258 (3d Cir. 2017) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010)) (internal quotation marks omitted). To plead a facially plausible claim the plaintiff must plead factual content that allows the Court to draw the inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556

U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). The Court accepts as true the factual allegations contained in the complaint but disregards rote recitals of the elements of a cause of action, legal conclusions, and conclusory statements. *James v. City of Wilkes-Barre*, 700 F.3d 675, 679 (3d Cir. 2012). In ruling on a motion to dismiss, the Court considers only "the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Guidotti v. Legal Helpers Debt Resolution, LLC*, 716 F.3d 764, 772 (3d Cir. 2013).

"In ruling on a 12(b)(6) motion, courts can and should reject legal conclusions, unsupported conclusions, unwarranted references, unwarranted deductions, footless conclusions of law, and sweeping legal conclusions in the form of actual allegations." *Bright v. Westmoreland Cty.*, 380 F.3d 729, 735 (3d Cir. 2004) (citation and internal quotation marks omitted). Ultimately, a complaint must contain facts sufficient to nudge any claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

### III.  DISCUSSION

#### A.  <u>Individual Plaintiffs' Standing</u>

The Court must first address the issue of standing. Standing ensures that each plaintiff has the "requisite personal interest […] at the commencement of the litigation[.]" *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n.22 (1997) (quotation marks omitted). Defendants claim that the parent Plaintiffs, Patrice Rogers, Nicauris Esteves, and Jennifer Bermudez, suing on their own behalf and on behalf of their respective minor child, lack standing. ECF No. 13 at 27-28. Specifically, Defendants contend that these parents do not demonstrate a cognizable injury because they are not parties to the 2017 Charter and their children are still educated at MSA (until its closure on June 30, 2023). *Id*. There is also no standing to sue, according to

Defendants, pursuant to the ESSA because they are not recipients of federal funding; nor is there standing pursuant to Pennsylvania's Charter School Law because the parents are not themselves a charter school. Plaintiffs contend that the parent Plaintiffs do have standing because their children will be "deprived of an educational opportunity on the basis of discrimination." ECF No. 16 at 23.

At the "commencement of the litigation," plaintiff has the burden of demonstrating that the standing requirements are met. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 170 (2000). The Supreme Court has held that to establish standing a plaintiff must establish three elements: an injury in fact; a causal connection between the injury and the conduct complained of; and substantial likelihood of remedy, not mere speculation that the requested relief will remedy the alleged injury in fact. *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992). An injury-in-fact "is an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical ..." *Danvers Motor Co. v. Ford Motor Co.*, 432 F.3d 286, 290-91 (3d Cir. 2005).

While Defendants rely heavily on *I-Lead Charter School-Reading v. Reading School District*, a decision in this Court finding the parents lacked standing because their children continued to be educated at the school and lacked injury, the Court is persuaded by Plaintiffs' contention that this reliance is misplaced. *See I-Lead Charter Sch.-Reading v. Reading Sch. Dist.*, 2017 WL 2653722, at *3 (E.D. Pa. June 20, 2017). In that case, the school had no definite date of closure and the school had recently won an appeal of the charter revocation to the Charter School Appeal Board. *Id*. Here, the school's closure is imminent, and the minors will be deprived of the opportunity to be educated at MSA – creating a cognizable injury and standing for the parent Plaintiffs.

7

B.  <u>Claims Against Individual Defendants in Official Capacity</u>

Defendants assert that the claims brought against the individual Defendants in their official capacities should be dismissed because they are duplicative of claims against the SDP. ECF No. 13 at 11. Plaintiffs concede that these claims are redundant and do not oppose dismissal of the official capacity claims against the individual Defendants. ECF No. 15 at 4.

The Court agrees with Defendants that Plaintiffs' claims against individuals in their official capacities should be dismissed because those claims are duplicative of claims against their employer, the SDP. *See Gray v. Great Valley Sch. Dist.*, 102 F. Supp. 3d 671, 679 (E.D. Pa. 2015) ("[T]he U.S. Court of Appeals for the Third Circuit has affirmed the dismissal of official-capacity claims against individual defendants where a plaintiff also sues their municipal employer."). Therefore, the claims against the individual Defendants are dismissed with prejudice as to all claims against the individual Defendants in their official capacities.

C.  <u>Constitutional Claims Brought Pursuant to 42 U.S.C. § 1983</u>

Section 1983 does not contain any substantive rights, only the ability to pursue a federal right of action to seek a remedy for violations of constitutional or federal law. Defendants assert that relief sought under the Constitution "must utilize the vehicle of a claim under 42 U.S.C. § 1983 and may not assert claims for relief under the United States Constitution directly." ECF No. 13 at 19-20 (quoting *Providence Pediatric Med. Day Care, Inc. v. Alaigh*, 112 F. Supp. 3d 234, 247 (D.N.J. 2015)). Defendants go further in claiming that, if this action was brought under Section 1983, charter schools are considered analogous to a municipal corporation and may not bring a constitutional challenge under Section 1983 against their creator, SDP. *Id.* (citing *Pocono Mountain Charter School v. Pocono Mountain School Dist.*, 908 F.Supp.2d 597, 611-12 (M.D. Pa. 2012)).

By contrast, Plaintiffs hold the position that they do not seek relief under the U.S. Constitution. ECF No. 16 at 5-6. They do concede, however, that "such claims would be barred (unless brought under 42 U.S.C. § 1983)." *Id*. at 5. Instead, Plaintiffs contend that they seek equitable relief pursuant to the Court's "equitable jurisdiction" to enjoin the closure of MSA, "as well as relief pursuant to 42 U.S.C. § 1983." *Id*. at 6. [3] Plaintiffs persist that "although the basis for Plaintiffs' claims arises from statutory and constitutional violations threatened by Defendants, the relief sought by Plaintiffs arises from the Court's equitable powers and from 42 U.S.C. § 1983." *Id*. The Court reads Plaintiffs apparent contradictory statements regarding the applicability of Section 1983 as an unprecedented attempt to carve out remedy alone into a separate category for court action from a showing first of harm and then of remedy under Section 1983. In essence, Plaintiffs would have this Court grant them a remedy of equitable relief that is grounded upon Section 1983, without first needing to present to the Court a harm cognizable under Section 1983. The Court cannot grant a remedy, that is, impose an injunction, without the movant first establishing for the record a cognizable harm pursuant to Section 1983. As will now be discussed, Plaintiffs do not have a cognizable harm under Section 1983 because it "has no privileges or immunities under the Federal Constitution which it may invoke in opposition to the will of its creator." *Williams v. Mayor of Baltimore*, 289 U.S. 36, 40 (1933)

A "charter school" is defined by the Pennsylvania Charter School Law as "an independent public school established and operated under a charter from the local board of

---

[3] Defendants add that there are limits on a court's imposition of equitable relief. ECF No. 28 at 10-11. The Supreme Court recognized that federal courts have the ability to enjoin unconstitutional actions by federal and state officers. *See Armstrong v. Exceptional Child Center, Inc.*, 575 U.S. 320, 327 (2015). However, the Supreme Court stated such power is subject to express and implied statutory limitations that courts of equity cannot ignore. Since Section 1983 provides a statutory right of action to sue for violations of constitutional law, Defendants contend its arguments that MSA cannot sue SDP under Section 1983 is consistent with the *Armstrong* decision. ECF No. 28 at 11. In their Sur-reply, Plaintiffs assert that relief under Section 1983 is not exclusive and does not bar equitable relief. ECF No. 29 at 4. This Court is permitting Plaintiffs the opportunity to amend their complaint and seek appropriate relief.

school directors and in which students are enrolled or attend." 24 P.S. § 17–1703–A. Charter schools "must be organized as a public, nonprofit corporation." *Id.* Because MSA is a public charter school, the principles of municipalities apply for purposes of Section 1983. *See e.g.*, *Afrika v. Khepera Charter Sch.*, 2017 WL 1042075, at *3, n. 5 (E.D. Pa. Mar. 16, 2017) (citation omitted); *Luu v. Esterly*, 367 F. Supp. 3d 335, 349 (E.D. Pa. 2019) ("For purposes of § 1983, courts in this district have considered charter schools [] municipalities[.]); *Schienblum v. Lehigh Valley Charter Sch. for the Arts*, 2016 WL 7429192, at *4 (E.D. Pa. Dec. 20, 2016) (same). A charter school is analogous to a municipality because "a charter school operates with the authorization of a local school district for the limited purpose of providing an alternate education option for students of the district." *I-Lead Charter Sch.-Reading v. Reading Sch. Dist.*, 2017 WL 2653722, at *4 (E.D. Pa. June 20, 2017); *see also Pocono Mountain Charter School v. Pocono Mountain School District, et al.*, 908 F.Supp.2d 597, 612 (M.D. Pa. 2012) ("This relationship is analogous to that of a municipal corporation-creator where the powers granted to the municipal corporation are defined and limited by the creator.")

A municipality, "created by a state for the better ordering of government, has no privileges or immunities under the Federal Constitution which it may invoke in opposition to the will of its creator." *Williams*, 289 U.S. at 40. In treating MSA, a public charter school, as analogous to a municipality, the Court finds that all constitutional claims brought by MSA against SDP under Section 1983 must be dismissed, as a charter school – like a municipality – cannot sue its creator, here the school district, under Section 1983. *See I-Lead Charter Sch.-Reading v. Reading Sch. Dist.*, 2017 WL 2653722, at *3 (E.D. Pa. June 20, 2017).

Plaintiffs point out that authority cited by Defendants – namely *I-Lead* and *Pocono*, wherein this Court and the Western District of Pennsylvania held that a charter school is

analogous to a municipality for purposes of Section 1983 – is persuasive and urge this Court to reexamine the issue because the *Pocono* decision overlooked allegedly important factors. *Id*. at 12-15; *see I-Lead Charter Sch.-Reading*, 2017 WL 2653722, at *3; *see also Pocono Mountain Charter School*, 908 F.Supp.2d 597.

      First, Plaintiffs argue that the Pennsylvania Charter School Law provides due process protections that establish as a logical conclusion that charter schools cannot be political subdivisions, and since they cannot be classified as political subdivisions, they therefore, can sue their authorizing school districts under Section 1983. *Id*. at 14. Even if charter schools cannot be classified as political subdivisions of the state, that does not end the inquiry as to whether they can sue their authorizing school district under Section 1983. The Court need not conclude, and does not conclude here, that charter schools are political subdivisions. It does not need to do so for purposes of this analysis. The court concludes and agrees with the other courts that have analyzed this issue for purposes of Section 1983, that charter schools possess analogous municipal features that bar them from suing their authorizing school district under Section 1983. *See e.g.*, *I-Lead Charter Sch.-Reading*, 2017 WL 2653722; *Pocono Mountain Charter School*, 908 F.Supp.2d 597.

      MSA in making this argument that the charter school is unlike a municipality because Pennsylvania has granted it due process rights, and in their attempt to have the Federal Courts intervene in this dispute, conflate due process protections under the Constitution and administratively provided and defined due process procedures contained within the Pennsylvania Charter School Law. In fact, MSA has access to, and can pursue those administrative due process avenues and there has been no allegation that this due process has been denied to them. The Charter School Law independently allows for adjudication of charter applications but does not

11

itself create constitutional due process protections for its charter schools. The alleged due process protections Plaintiffs cite include, *inter alia*, the local board of school directors holding a public hearing on the charter application and permitting denied charter school applicants an opportunity to revise and resubmit. These administrative procedures are not at odds with MSA's lack of standing to sue under Section 1983.

Second, Plaintiffs contend that charter schools are private institutions governed by independent trustees as non-profit corporations. *Id*. While some governance may be conducted by independent trustees, it is the SDP that grants charters to applicant schools, oversees their performance, and funds their operations. They are not private institutions; they are independent *public* schools. Trustees of charter schools are "public officials" and charter schools receive their funding from the school districts where students attending the charter school reside. 24 P.S. § 17-1715-A; 24 P.S. § 17-1725-A(a).

Third, Plaintiffs cite to the National Labor Relations Act, stating it determines that charter schools are not political subdivisions. As stated previously, this characterization does not end the analysis. The Court finds unpersuasive Plaintiffs' cherry-picking language from the Charter School Law's identification of charters schools as a "body corporate" as allegedly manifesting intent to treat charter schools differently than the public schools within the school districts that have authorized the charts. They are public schools, independent, but public schools nonetheless. SDP has not legislated that charter schools be treated differently from municipalities, and in fact SDP's position is apparent from its argument to dismiss on this ground.

Finally, Plaintiffs cite to this Court's decision in which Plaintiffs' claim the Court expressed skepticism as to whether a charter school is a political subdivision. *Id*. at 15; *see*

12

*Haney-Filippone v. Agora Cyber Charter Sch.*, 538 F. Supp. 3d 490, 497 (E.D. Pa. 2021), *appeal dismissed*, 2021 WL 5984929 (3d Cir. Oct. 20, 2021). Again, that skepticism is of no import here. The holding in the *Haney-Filippone* opinion was that charter schools should be considered "public agencies" for the purposes of the Family and Medical Leave Act. Based on the circumstances of the charter school's relationship with its creator, public charter schools are sufficiently analogous to a municipality that they should be barred from bringing Section 1983 claims against the school district.

Accordingly, MSA is precluded from asserting any constitutional claims against the school district pursuant to Section 1983.

D. <u>Rule 8 Pleading Requirements</u>

The Complaint as a whole, Defendants allege, is filled with conclusory allegations that fail to meet the plausibility pleading requirement. ECF No. 13 at 11-14. The Court will dismiss a case if the complaint is filled with facts that "do not permit the court to infer more than the mere possibility of misconduct," Fed. R. Civ. P. 8(a)(2)). Defendants identify three categories of Plaintiffs' substantive claims: (1) using the Renewal Framework to evaluate MSA and other charter schools for renewal or closure is discriminatory;[4] (2) closing MSA violates the Supremacy Clause of the U.S. Constitution because it is inconsistent with the ESSA; and (3) closing the MSA through the Surrender Clause violates federal and Pennsylvania due process laws and the Charter School Law. ECF No. 13 at 12-13.

The Court will address these areas in turn.

*1. Renewal Framework and Race*

---

[4] Plaintiffs claim this violates Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d; 34 C.F.R. Part 100; Article I, Sections 26 and 29 of the Pennsylvania Constitution; and Article III, Section 14 of the Pennsylvania Constitution.

First, Defendants contend that Plaintiffs fail to provide sufficient facts supporting their allegation that the Renewal Framework and SDP are biased against certain racial minorities. ECF No. 13 at 13. Instead, Plaintiffs make conclusory statements about how SDP uses the Framework and engages in allegedly discriminatory practices towards charter schools.

By contrast, Plaintiffs claim to plead both specific intent and deliberate indifference, either of which are sufficient to establish intent under Title VI. ECF No. 16 at 7-10. MSA alleges that the Renewal Framework used to assess charter schools is skewed against institutions that serve minority students, causing a discriminatory effect. *Id*. at 7. MSA condemns SDP for knowingly enforcing discriminatory criteria and deliberately devising the Framework to target such schools for closure. *Id*. Plaintiffs claim primarily that SDP's focus on performance measures on which African American and Hispanic students traditionally underperform and failure to account for that disparity causes significant bias against charter schools with high percentages of those minority groups. *Id*. at 8. Plaintiffs further contend that SDP is aware these minority groups underperform on those academic measures and their discriminatory effect. *Id*. In the alternative, Plaintiffs claims that stakeholder and public complaints about racial bias in charter school oversight led to an investigation, putting SDP on notice of the bias, and that continued enforcement of biased criteria during that investigation constitutes deliberate indifference. *Id*. at 9.

Plaintiffs insist that under *Twombly*, they need not support their claims with data or evidence. *Id*. A short and plain statement of a claim is all the federal rules require. Fed. R. Civ. P. 8(a). It would be "illogical" according to Plaintiffs to require persuasive proof of their claims prior to discovery. Fed.R.Civ.P. 26(d); ECF No. 16 at 10. Furthermore, Plaintiffs contend they pled facts related to Defendants' state of mind appropriately on information and belief because

14

the facts are "peculiarly within the defendant's knowledge or control." ECF No. 16 at 10 (quoting *McDermott v. Clondalkin Grp., Inc.*, 649 F. App'x 263, 267–68 (3d Cir. 2016).

The Court finds that Plaintiffs have failed to plead sufficient facts to support this claim. "Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555. The Complaint includes broad allegations without foundation in facts. The fact that MSA's student population has a higher percentage of African American and Hispanic students than the district's general student population is not in itself reason to find discrimination. Plaintiffs allege that charter schools who serve higher percentages of minority students are targeted for closure, without any elaboration or support. Similarly, MSA claims that SDP has chosen nonrenewal or revocation of charters for schools that serve racial minorities at a higher rate, again without any elaboration or support. The Complaint is littered with comparable assertions that broadly accuse SDP of misconduct but fail to provide any factual support for such a belief.

A review of the facts provided in Plaintiffs' Amended Complaint and Response to Defendants' Motion reveals that the decision to close MSA was predicated on a highly detailed analysis involving a variety of factors and occurred subsequent to MSA's negotiated opportunity to have more time to meet Pennsylvania's criteria. After failing to meet those criteria for the second time in a period of at least five years, Plaintiffs now take issue with the entire process of evaluation. Yet, "the Complaint falls short of stating facts that could support a plausible inference of intentional race-based (or national origin-based) discrimination or deliberate indifference toward such discrimination." *Erie CPR v. PA Dep't of Transportation*, 343 F. Supp. 3d 531, 549 (W.D. Pa. 2018). "In order to prove intentional discrimination through the application of a facially neutral policy, a plaintiff must show that the relevant decisionmaker

adopted the policy at issue 'because of, not merely in spite of, its adverse effects upon an identifiable group.'" *Id*. at 550 (quoting *Pryor v. Nat'l Collegiate Athletic Ass'n.*, 288 F.3d 548, 562 (3d Cir. 2002)). It is insufficient to assert only that the policy has a disproportionate effect on certain minorities. "A mere awareness of the consequences of an otherwise neutral policy will not suffice." *Pryor*, 288 F.3d at 562 (quoting *Personnel Administrator of Massachusetts v. Feeney,* 442 U.S. 256, 277-78 (1979)).

While Plaintiffs may view certain evaluation criteria as discriminatory, it is a broad leap to conclude that SDP has the intent and historical practice of targeting specific schools with higher percentages of racial minorities. Plaintiffs provide no factual support in their Amended Complaint for that leap. The well-pled facts, given all due credit, must be viewed in the context that they are founded on Plaintiffs concern regarding the disparate impact or effect that the Renewal Framework has on minority students, which is – by itself – insufficient. *See Erie CPR*, 343 F. Supp. 3d at 550. Therefore, Plaintiffs claims of discrimination are dismissed without prejudice to plead the necessary, specific factual support.

### 2. Violation of the Pennsylvania Constitution

The second category is Plaintiffs claims of discrimination under the Pennsylvania Constitution, specifically in violation of Article I, Sections 26 and 29, and centering around an alleged violation of public interest. The allegation that MSA's closure would violate the public interest in education because it is based on discriminatory performance measures and a pattern of discriminatory SDP decisions is, according to Defendants, merely a conclusory statement. ECF No. 13 at 16.

In their Response, Plaintiffs claim that Defendants "gloss over" the specific articulation of reasons why SDP's actions would constitute a violation of public interest. ECF No. 16 at 10-

12. Plaintiffs reiterate that the closure of MSA violates public interest by: (1) being based on discriminatory evaluation criteria and practices; (2) lacking a plan for MSA students post-closure; (3) lacking a rational basis for MSA's closure; and (4) basing the closure decision on limited data due to the COVID-19 pandemic. *Id*. at 11. In their Motion to Dismiss, Defendants reference only the first of these reasons.

Though Plaintiffs articulate four allegations in violation of the Pennsylvania Constitution, all are conclusory statements lacking in well-plead factual support. The first and third allegations listed are based on the same premise that the revocation of MSA's charter was inappropriate and discriminatory. The Court addressed above how Plaintiffs claims of discrimination against SDP are insufficiently pled. Even so, Plaintiffs fail to describe their own factual support for these allegations in their Response to the Motion to Dismiss. Simply stating that the existence of Title VI and other anti-discrimination laws prove discrimination is against public policy fails to contemplate that it is whether the conduct is discriminatory that Plaintiffs must adequately plead. The Court wholeheartedly agrees that preventing discrimination is in the public interest, yet that does not guarantee all discrimination claims meet the pleading requirements by virtue of expressing a public good.

Plaintiffs claim the second ground, lacking a plan for students post-closure, is "inherently plausible that haphazardly closing a school without a plan for its students could cause significant and unreasonable harm to the students, and thus violate the public interest in a thorough and efficient system of public education." *Id*. at 12. That kind of generic, broad statement concedes that the Court must find something *inherently* plausible without showing the Court any actual plausibility. Similarly, the fourth allegation of incomplete data, is a conclusory statement made without any specificity. In their Amended Complaint, Plaintiffs mention the pandemic just once,

17

stating that "[t]he COVID pandemic severely limited school operations and has thereby significantly limited the data upon which SDP can properly evaluate MSA' performance." ECF No. 7 ¶ 120. There is no information provided on how school operations were limited, which years of data this affected, how those limitations impacted the data provided to SDP, or if this concern was communicated to SDP at any time prior to this action, among many other possible information within Plaintiffs' possession to develop this claim. Without anything except that short, conclusory statement, there are no facts pled to support this argument. Therefore, Plaintiffs claims that Defendants violated the Pennsylvania Constitution are dismissed without prejudice.

### 3. Individual Defendants in their Individual Capacities

Finally, Defendants seek to dismiss the individual Defendants in their individual capacities because Plaintiffs failed to allege substantive allegations against them. ECF No. 13 at 17. According to Defendants, "[t]here are *no allegations* in the Complaint pertaining to the actions or inactions of the individual Defendants." *Id*. Plaintiffs acknowledge that their claims against the individual Defendants in their individual capacity lack specificity as to how the actions or inactions of those individuals give rise to Plaintiffs' claims. ECF No. 16 at 5. Plaintiffs request that the Court dismiss these claims without prejudice and afford Plaintiffs the opportunity to amend the Complaint. *Id*. With the understanding that the Court should be generous in providing opportunities for Plaintiffs to remedy factual pleading defects early in a case, the Court will dismiss the claims against the individual Defendants in their individual capacities without prejudice.[5]

---

[5] Defendants further allege that the individual Defendants possess qualified immunity regarding claims brought against them in their individual capacity. ECF No. 13 at 17-19. However, the Court will not address qualified immunity because Plaintiffs failed to plead sufficient facts as to the individual Defendants' conduct. Since it is unclear how Plaintiffs' claims relate to the individual Defendants and Plaintiffs will have an opportunity to amend their Complaint, the Court is not, at this time, making a determination on qualified immunity.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is granted and the claims in Plaintiffs Amended Complaint dismissed with and without prejudice with an Order to follow accordingly.[6]

BY THE COURT:

<u>/s/ Chad F. Kenney</u>
**CHAD F. KENNEY, JUDGE**

---

[6] Because the Court finds the Complaint fails to state a well-pleaded claim upon which relief may be granted, it does not need to address Defendants' alternative arguments about the validity of the Surrender Clause in the 2017 Charter. ECF No. 13 at 20-22, 23-27.