## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| **MEMPHIS STREET ACADEMY CHARTER SCHOOL AT J.P. JONES, et al.,** : : : : : : : : : : : : : : **Plaintiffs,** v. **SCHOOL DISTRICT OF PHILADELPHIA,** *Defendant.* | **CIVIL ACTION** No. 22-02760 |

### MEMORANDUM

**KENNEY, J.**                                                                                             June 15, 2023

### I.     INTRODUCTION

Plaintiffs Memphis Street Academy Charter School at J.P. Jones ("MSA"), along with seven sets of individual Plaintiffs (*i.e.,* seven parents and their minor children) (collectively, "Plaintiffs") bring four claims against Defendant, the School District of Philadelphia ("SDP"), through their Second Amended Complaint. ECF No. 32. The Complaint seeks: injunctive relief to prohibit racially discriminatory treatment of MSA and its students (Count I); injunctive and declaratory relief regarding the unenforceability of the Surrender Clause contained in MSA's charter (Count II); declaratory relief regarding the illegality of SDP's Charter School Performance Framework (Count III); and injunctive relief related to MSA's violation of the Pennsylvania Constitution's Education Clause (Count IV). *Id.* Before the Court is Defendant's Motion to Dismiss (ECF No. 36), Plaintiffs' Response (ECF No. 37), Defendant's Reply (ECF No 38), and Plaintiffs' Sur-Reply (ECF No. 39). For the reasons set forth below, the Court will grant in part and deny in part Defendant's Motion and Counts II and IV will be dismissed. An appropriate Order will follow.

## II.  BACKGROUND AND PROCEDURAL HISTORY

The Court previously described the background and procedural history of this case (ECF No. 30) and will describe here only the most pertinent information. MSA is a nonprofit corporation that operates a charter school in Philadelphia pursuant to a written charter agreement with SDP (the "Charter Agreement"). ECF No. 32 ¶¶ 10, 19. A school charter is valid for a specified number of years and is evaluated for renewal, nonrenewal, or revocation at the end of its term. *See* 24 P.S. §§ 17-1701-A; ECF No. 32 ¶ 86.

In 2012, MSA was granted an initial charter of five years. In 2017, the SDP Charter Schools Office applied its Renewal Framework (the "Framework") to MSA's performance from 2012 through 2016 and found the school had failed to meet the Academic Success Domain standards outlined therein. ECF No. 32 ¶ 135. Though such a failure made it possible to not renew MSA's charter, MSA negotiated and signed a new charter, which included specific academic conditions and a clause to surrender its charter if these conditions were not met (the "Surrender Clause"). *Id.* ¶ 137. In 2022, SDP applied the Framework to MSA's performance from 2017 through 2021 and found that MSA again failed to meet the Academic Success Domain standards. *Id.* ¶ 141. On June 23, 2022, SDP's governing body, the Philadelphia Board of Education, found MSA to be in violation of the conditions referenced in MSA's Charter Agreement and invoked the Surrender Clause. *Id.* ¶ 22. The Philadelphia Board of Education then directed MSA to forfeit its charter and close by June 30, 2023, as specified in the Surrender Clause. *Id.*

Plaintiffs allege that the Framework is an inappropriate and unlawful metric because it is based (in part) on the Pennsylvania System of School Assessment ("PSSA") standardized test and truancy rates, two metrics on which minority students historically underperform. *Id.* ¶¶ 38–47, 54. Indeed, Plaintiffs provide substantial data indicating that Black and Hispanic students score

2

significantly worse across both metrics and in the Academic Success Domain of the Framework. *Id.* ¶¶ 41–55, 77–78; *see also id.* ¶¶ 97–107 (findings of MSA's statistician). Additionally, the student populations of all fourteen charter schools that SDP has not renewed or have been recommended for nonrenewal since the Framework was implemented were predominately Black or Hispanic. *Id.* ¶ 80.

According to Plaintiffs, SDP is aware of the Framework's discriminatory impact and yet continues to rely upon it. First, Plaintiffs assert, the data alone speaks for itself; Defendant must be aware that the metrics at issue are largely responsible for the closure of only charter schools serving predominately minority populations. *See id.* ¶¶ 29, 83. Second, advocates have raised explicit concerns related to the metrics and have called into question whether use of the Framework, and related charter school closures, is discriminatory. *Id.* ¶¶ 74, 84. Additionally, the significant racial disparity in test proficiency rates, which underpin the Framework, has been frequently discussed by SDP's governing Board of Education. *Id.* ¶ 47. Indeed, following public outcry, Defendant launched an internal investigation in December 2021. *Id.* ¶ 192. This investigation remains ongoing, the results have not been publicized, and SDP continues to rely upon the Framework in assessing charter renewal. *See id.* ¶ 193.

On February 8, 2023, Plaintiffs filed their Second Amended Complaint (the "Complaint"). ECF No. 32. Defendant filed the instant Motion to Dismiss on March 8, 2023. ECF No. 36. The Motion was fully briefed on April 7, 2023. ECF Nos. 37–39.

### III.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for dismissal of a complaint or a portion of a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) tests "the sufficiency of the

allegations contained in the complaint." *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993) (citation omitted). The Court will grant a motion to dismiss if the factual allegations do not "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Zuber v. Boscov's*, 871 F.3d 255, 258 (3d Cir. 2017) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010)) (internal quotation marks omitted). To plead a facially plausible claim, the plaintiff must plead factual content that allows the Court to draw the inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). The Court accepts as true the factual allegations contained in the complaint but disregards rote recitals of the elements of a cause of action, legal conclusions, and conclusory statements. *James v. City of Wilkes-Barre*, 700 F.3d 675, 679 (3d Cir. 2012). In ruling on a motion to dismiss, the Court considers only "the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Guidotti v. Legal Helpers Debt Resol., LLC*, 716 F.3d 764, 772 (3d Cir. 2013).

"In ruling on a 12(b)(6) motion, courts can and should reject legal conclusions, unsupported conclusions, unwarranted references, unwarranted deductions, footless conclusions of law, and sweeping legal conclusions in the form of actual allegations." *Bright v. Westmoreland Cty.*, 380 F.3d 729, 735 (3d Cir. 2004) (citation and internal quotation marks omitted). Ultimately, a complaint must contain facts sufficient to nudge any claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

4

## IV. DISCUSSION

Defendant seeks dismissal of the Complaint in its entirety. Upon consideration of the briefing and the Complaint, the Court finds dismissal of Counts II and IV appropriate. Counts I and III have been properly pled and will not be dismissed.

### a. Title VI

Counts I and III seek injunctive or declaratory relief because, *inter alia*,[1] the Framework violates Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d. Title VI prohibits discrimination in a federally funded program[2] "on the ground of race, color, or national origin." Title VI "prohibits only intentional discrimination." *Alexander v. Sandoval*, 532 U.S. 275, 280 (2001). However, a plaintiff may establish intentional discrimination through a showing that the defendant acted with "deliberate indifference." *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 272–73 (3d Cir. 2014).

To adequately plead this theory of discrimination, Plaintiffs must allege that the defendant: (1) knew that a harm to a federally protected right was substantially likely; and (2) failed to act. *See S.H. v. Lower Merion Sch. Dist.*, 729 F.3d 248, 263 (3d Cir. 2013) (internal citations omitted) (adopted in the Title VI context by *Blunt*, 767 F.3d at 272). Put differently, deliberate indifference requires a "deliberate choice, rather than negligence or bureaucratic inaction." *Id*. Moreover, the

---

[1] Plaintiffs also allege the same to be in violation of Article I, Section 29 of the Pennsylvania Constitution. Pa. Const. art I, § 29. This provision prohibits the denial or abridgment of equality of rights because of race or ethnicity and is substantively similar to the prohibitions codified in Title VI. Plaintiffs' claims under Section 29 involve determinations of state law which, since Section 29 was enacted in 2021, have not been explored by Pennsylvania courts. Accordingly, because Claims I and III survive Defendant's Motion to Dismiss based on Title VI, the Court declines to address the Pennsylvania Constitutional questions at this time.

[2] The parties do not dispute that SDP is a qualifying entity.

deliberate indifference standard requires actual knowledge rather than constructive knowledge. *Blunt*, 767 F.3d at 273. However, considering the remedial goals of Title VI and because "individuals who violate the law based on discriminatory motives sometimes do not leave a trail of direct evidence," circumstantial evidence can support a Title VI claim. *See id.*, at 273–75.

Here, Plaintiffs assert that Defendant has been deliberately indifferent to the Framework's discriminatory impact. To begin, Plaintiffs describe publicly available data that indicates: (1) there is a statistical correlation between student race and proficiency rates on PSSA standardized testing; (2) there is a statistical correlation between student race and truancy rates; (3) the overwhelming majority of schools that failed to earn at least 50% of the available points in the relevant categories served higher populations of Black/Hispanic students as compared to the overall SDP student population; (4) since the Framework was implemented, SDP has "*exclusively* nonrenewed or pursued the nonrenewal of charter schools with significantly higher percentages of Black or Hispanic students as compared to the SDP and charter school averages." ECF No. 32 ¶¶ 41–42, 53–54, 77–78, 80–83, 97–107. According to Plaintiffs, this data alone put SDP on notice of the Framework's discriminatory impact such that SDP had actual knowledge.

Moreover, these racial-disparity issues were raised with SDP and widely discussed within the Pennsylvania education community. To begin, the Pennsylvania Department of Education has recognized the racial achievement gap in PSSA testing. *Id.* ¶ 46. Additionally, the PSSA disparity has been a "topic of frequent public comment" by SDP's governing Board of Education. *Id.* ¶ 47. Indeed, charter school advocates have "repeatedly made SDP aware that the Academic Success Domain of the Framework is unfairly skewed." *Id.* ¶ 74. Finally, "in response to repeated public complaints regarding the discriminatory nature and effect of SDP's charter assessment and

authorization practices," SDP launched an internal investigation (which remains ongoing). *Id.* ¶ 192.

These allegations taken together, and affording the appropriate deference to Plaintiffs' pleadings, plausibly plead a deliberate indifference claim under Title VI. The Complaint alleges facts that support the reasonable inference that Defendant had actual knowledge that use of the Framework was substantially likely to cause the harm prohibited by Title VI. Moreover, there is no meaningful dispute that SDP continues to rely upon the Framework. Though there may be lawful reason for its continued use, such defenses must be raised later in this litigation; where Plaintiffs have adequately pled a claim under Title VI, dismissal is inappropriate.

### b. The Surrender Clause

Plaintiffs seek injunctive and declaratory relief prohibiting enforcement of the Surrender Clause. In support of this position, Plaintiffs argue that the Surrender Clause has lapsed, violates the Charter School Law, and was not voluntarily agreed upon. These arguments fail as a matter of law or are otherwise improperly pled. Accordingly, Count II must be dismissed.

The Surrender Clause provides that "if any of the academic conditions . . . are not met fully by [MSA], [MSA] will surrender its charter and will close on or before June 30, 2022." ECF No. 32 ¶ 21. The Surrender Clause does not require that SDP determine whether the academic targets were met by a specific date and, other than generally making such a determination, does not require that SDP take any action to trigger MSA's duty to surrender. *Id.* As pled by Plaintiffs, on June 23, 2022, SDP "found MSA to be in violation of the conditions referenced in the Surrender Clause." *Id.* ¶ 22. Thus, by the terms of the Surrender Clause, MSA was required to surrender its charter and close by June 30, 2022. This is so even when the text of the Surrender Clause is strictly

7

construed in light of due process concerns.[3] Indeed, the unambiguous text of the Surrender Clause and the facts pled by Plaintiffs point squarely to the conclusion that the Surrender Clause had not lapsed when SDP first sought to enforce it *prior to* June 30, 2022. That Defendants provided MSA with a limited benefit to which the school was not entitled (continued operations) does not negate MSA's breach of the Charter Agreement. Simply, that MSA has been in breach of its obligations under the Surrender Clause since June 30, 2022 does not render it now unenforceable.

Additionally, the Surrender Clause does not violate Charter School Law (the "CSL"). Rather, the surrender of a charter is directly contemplated by the CSL: "When a charter is revoked, not renewed, forfeited, *surrendered* or otherwise ceases to operate, the charter school shall be dissolved." 24 P.S. § 17-1729-A(i) (emphasis added). These words have purposely distinct meanings to "give effect to all [statutory] provisions." *See* 1 P.S. § 1921(a); *see also Commonwealth v. McClelland*, 233 A.3d 717, 734 (Pa. 2020) (courts must give effect to every word and may not assume any words were intended as mere surplusage). To "revoke" means to take back, recall, cancel, or rescind. *See Black's Law Dictionary* (11th ed. 2019). Similarly,

---

[3] Plaintiffs' due process concerns are unavailing. As Plaintiffs point out, "a waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege [and] the determination of whether there has been an intelligent waiver of [a right] must depend, in each case, upon the particular facts and circumstances surrounding that case." *See Johnson v. Zerbst*, 304 U.S. 458, 464 (1938) (relied upon by Plaintiffs). As discussed *infra*, the Complaint does not adequately allege that MSA was coerced into signing the Charter Agreement as a whole or agreeing to the Surrender Clause more specifically. Nor does it allege that MSA was "unaware of the significance of [the provision]" at issue. *See Erie Telecomms., Inc. v. City of Erie*, 853 F.2d 1084, 1095 (discussing cases where the waiver of a constitutional right was at issue). Indeed, Plaintiffs do not allege any facts related to "the process leading up to the execution of the disputed contract" other than the bald fact that MSA was facing nonrenewal. *See id.* (citing the concurring opinion in *D.H. Overmyer v. Frick Co.*, 405 U.S. 174, 189 (1972)). Nor does the Complaint allege that the School District is a more sophisticated entity than MSA, that MSA was not represented by counsel, or that the negotiations were not conducted at arms-length. *See id.* at 1096 (discussing the relevant factors). Thus, confronted with the facts alleged here (a signed contract and a single, conclusory allegation regarding coercion), the Court can only reasonably infer that MSA voluntarily, knowingly, and intelligently waived its due process rights.

"nonrenewal" means failure to re-create a legal relationship. *Id.* In this context, both revocation and nonrenewal describe actions taken by the School District against a charter school: either cancel the charter or decline to enter into a new charter agreement.

Conversely, to "surrender" means to yield one's power. *Id.* Here, it means to willingly forfeit the charter without action by the School District. This makes sense because the Surrender Clause contemplates dissolution "without protest and without recourse" (ECF No. 32 ¶ 21), and, additionally, the word "surrender" invokes a non-adversarial process (as opposed to revocation or nonrenewal). Indeed, the CSL directly contemplates and permits a charter school to yield its charter without any action by the School District or further procedures.[4] Accordingly, the Surrender Clause does not contravene, violate, contradict, or frustrate the CSL or its purpose.

Finally, Plaintiffs allege that MSA acquiesced to the Surrender Clause under coercion (i.e., threat of nonrenewal of its charter). ECF No. 32 ¶ 139. However, there are no other facts alleged to support this asserted coercion. Despite Plaintiffs' argument raised in the brief that "SDP threatened to nonrenew MSA's charter *unless* it agreed to the Surrender Clause" (ECF No. 23 at 23) (emphasis added), the relevant portion of the Complaint does not contain any such allegation. *See* 32 ¶¶ 135–40. Nor can the Court find any support for Plaintiffs' position that the Surrender Clause was the lynchpin of the Charter Agreement and surrounding negotiations. Indeed, Plaintiffs do not allege any facts indicating that Defendant "specifically exploited [their] bargaining power" to include the *specific* clause at issue. *See Feite v. Neumann*, 19-cv-4280, 2020 WL 670135 at *3 n.23 (E.D. Pa. Feb. 11, 2020) (coercion in the context of forum selection clauses). Moreover, even

---

[4] Though the CSL describes the process warranted for schools facing "revocation or nonrenewal," the relevant law does not articulate any process afforded when charters are *surrendered*. *See* 24 P.S. § 17-1729-A(i). Thus, the process that Plaintiffs claim to be due under the CSL does not extend to the surrender of a charter that, again, aligns with the CSL's distinction between revocation, nonrenewal, and surrender.

a contract entered under coercion may be ratified if the coerced party "accepts the benefits flowing from it, or remains silent, or acquiesces in the contract for any considerable length of time after the party has the opportunity to annul or avoid the contract." *See Nat'l Auto Brokers Corp. v. Aleeda Dev. Corp.*, 364 A.2d 470, 476 (Pa. Super. Ct. 1976). This is so because under Pennsylvania law, coercion renders a contract voidable rather than void. *See Universal Atl. Sys., Inc. v. Honeywell Int'l, Inc.*, 388 F. Supp. 3d 417, 432 (E.D. Pa. 2019). Here, the facts alleged make clear that MSA continued to benefit from the Charter Agreement and did not seek to invalidate it until its terms no longer benefited MSA. As a matter of law and based on the facts alleged, MSA ratified the Charter Agreement by continuing to perform under it and by remaining silent for years after signing it. *See Radon Construction, LLC v. Land Endeavor 0-2, Inc.*, 221 A.3d 654, 662 (Pa. Super. Ct. 2019).

For the reasons articulated above,[5] Plaintiffs' claim related to the Surrender Clause (Count II) must be dismissed.

### c. The Education Clause of the Pennsylvania Constitution

Finally, Plaintiffs allege that SDP's intended closure of MSA and its continued application of the Framework would violate the Education Clause of the Pennsylvania Constitution. Pa. Const. art. III, § 14. The Education Clause provides that "[t]he General Assembly shall provide for the maintenance and support of a thorough and efficient system of public education to serve the needs of the Commonwealth." *Id.* Plaintiffs assert that SDP's decision to utilize the Framework and close

---

[5] Additionally, Plaintiffs note in their briefs that the Surrender Clause is unenforceable because it is tied to conditions that impose unrealistic performance standards that are allegedly racially biased. Though an agreement which violates the law is void, *Dev. Fin. Corp. v. Alpha Hous. & Health Care, Inc.*, 54 F.3d 156, 163 (3d Cir. 1995), this theory of relief is not actually pled as to Count II. Moreover, to the extent that Plaintiffs succeed on the merits of Counts I or III, the Court may order any necessary relief related to the Surrender Clause at that time.

MSA conflicts with public policy, which, in turn, violates the Education Clause because school district decisions must be "based solely on considerations for the people's interest in a thorough and efficient system of education," and the Court must "require [the school district's] action conform to the public interest." ECF No. 37 at 24 (citing *Root v. N. Cambria Sch. Dist.*, 309 A.2d 175, 178 (Pa. Commw. Ct. 1973)).

First, Plaintiffs reliance upon *Root* is ambitious because the notion that contravening "public interest" gives rise to a claim under the Education Clause has been entirely ignored in the half-century since *Root* was decided. More recently, in discussing the justiciability of claims arising under the Education Clause, the Pennsylvania Supreme Court emphasized that the Education Clause's primary concern is the legislature's affirmative duty to fund and maintain the administration of a *system* of public schools. *See Marrero ex rel. Tabalas v. Commonwealth*, 739 A.2d 110, 112 (Pa. 1999) (emphasis original), *abrogated on other grounds by William Penn Sch. Dist. v. Pa. Dep't. of Educ.*, 170 A.3d 414 (Pa. 2017) (finding that a claim related to Pennsylvania's funding of public education under the Education Clause is justiciable without comment on *Marrero*'s description of the historical purpose of the Education Clause). Plaintiffs have not pled that the Framework or MSA's closure implicates either the funding or administration of the public school system writ large.

Second, even if *Root* were persuasive, which it is not, Plaintiffs' policy considerations[6] all collapse onto themselves and miss the mark. In essence, each policy argument speaks to Plaintiffs'

---

[6] Plaintiff alleges that: (1) MSA's closure violates the public interest because it is premised upon allegedly discriminatory policies; (2) MSA's closure violates the public interest because there is purportedly no plan for MSA's students; (3) MSA's closure violates the public interest because it is based on academic performance data which is reflective of students' educational achievements before enrolling at MSA; and (4) MSA's closure violates the public interest because it is based upon limited data due to the COVID pandemic. *See* ECF No. 37 at 25.

11

qualms with using the allegedly discriminatory Framework to foreclose MSA students' ability to be educated at MSA specifically. Regardless of whether the Framework used is flawed, the Education Clause does not confer a right to be educated at the school of one's choice. *See Mullen v. Thompson*, 155 F. Supp. 2d 448, 452–53 (W.D. Pa. 2001) (finding it unpersuasive that merely "because the Pennsylvania Constitution grants [Plaintiffs] a right to a free public education, they have a state created property interest to be educated at the school of their choice" when students were being reassigned to other schools within the school district), *aff'd*, 31 F. App'x 77 (3d Cir. 2002); *see also Save Our Saltsburg Schs. v. River Valley Sch. Dist.*, 285 A.3d. 692, 697 (Pa. Commw. Ct. 2022) (favorably citing *Mullen*). Rather, the Education Clause provides for the general right to free public education. *See Save Our Saltsburg Schs.*, 285 A.3d at 697. Plaintiffs have not pled that MSA's closure will deprive its students of the free public education system to which they are entitled under the Education Clause. Accordingly, Count IV must be dismissed.

## V. CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss (ECF No. 36) will be granted in part and denied in part.

BY THE COURT:

/s/ Chad F. Kenney
_____
**CHAD F. KENNEY, JUDGE**