IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MEMPHIS STREET ACADEMY CHARTER SCHOOL AT J.P. JONES et al,** | : : : : | **CIVIL ACTION** |
| Plaintiffs, | : : | |
| v. | : | No. 22-02760 |
| **THE SCHOOL DISTRICT OF PHILADELPHIA** | : : : | |
| Defendant. | : | |

## MEMORANDUM

**KENNEY, J.**                                                                                         September 10, 2025

The Court writes for the benefit of the parties and assumes familiarity with the facts of the case. Plaintiffs move this Court to reconsider its July 14, 2025 Order (ECF No. 106) granting Defendant's Motion for Summary Judgment and denying Plaintiffs' Motion for Summary Judgment. *See* ECF No. 107 at 1.

John Paul Jones Middle School ("Jones School") was a chronically underperforming school that was not serving the needs of its students and families. ECF No. 90-1 ("SDP Stipulated Facts") ¶¶ 44–45, 65, 111. Under the Renaissance Schools Initiative, the entire Jones School was converted into a charter school. *Id.* ¶¶ 66–67; ECF No. 88-9 at 2, 6 ("2012 Charter"). Memphis Street Academy ("MSA") was granted the charter to operate the converted school—replacing the Jones School as the local catchment school. SDP Stipulated facts ¶¶ 66–77; 2012 Charter at 12. The Renaissance Schools Initiative gave increased autonomy to achieve dramatic improvements. SDP Stipulated Facts ¶ 63. With that increased autonomy came increased accountability. *Id.* MSA replaced John Paul Jones Middle School promising to do what the public school could not.

In MSA's fifth year of operation, the Charter Schools Office conducted a review of MSA's performance. *Id.* ¶ 75. MSA failed to meet the expectations of an earlier renewal framework. *Id.*

¶¶ 76–80. Instead of non-renewal of MSA's charter, after negotiations, MSA and the School District of Philadelphia agreed to the 2018 Charter. *Id.* ¶¶ 81–103. The 2018 Charter included conditions for renewal as well as a surrender clause. *Id.* ¶¶ 105–06. The Surrender Clause stated that "if any of the academic conditions . . . are not fully met by [MSA], [MSA] will surrender and forfeit its charter." *Id.* ¶ 106. The Charter Schools Office "will make a determination on whether any of the academic targets set forth above are not met fully by [MSA] once data for 2020-21 school year are available and made public." *Id.*

In May of 2022, the Charter Schools Office issued a 2021–2022 ACE-R Report in which it applied the Framework to MSA's charter renewal request and evaluated MSA's performance on the conditions. ECF No. 89-2 ¶ 24. The ACE-R Report stated that MSA failed to meet the 2018 Charter Conditions 1 and 2 for the 2018–2019 school year and Conditions 3 and 4 throughout the charter term. SDP Stipulated Facts ¶ 119; *see* ECF No. 88-19 at 27. On June 23, 2022, the School District of Philadelphia's Board adopted and approved Action Item No. 89, which found MSA to be in violation of the academic "Conditions for Renewal" included in the 2018 Charter as triggers for the Surrender Clause. SDP Stipulated Facts ¶ 122. The Board formally invoked the Surrender Clause to demand that MSA surrender its Charter and close by June 30, 2023. *Id.* ¶¶ 122–23.

MSA replaced an underperforming public school promising dramatic improvement. The Renaissance Schools Initiative gave MSA increased autonomy to deliver on that promise. With this autonomy came increased accountability. MSA now blames the demographics of its students—the students it agreed to serve when MSA replaced the public school—for its shortcomings. MSA was unable to deliver on agreed upon terms. As a consequence, the School District determined MSA must surrender its charter as agreed and return the running of the middle school to the School District. The School District may, as the School Reform Commission did with

2

the Renaissance Initiative conversion of the Jones School, try a solution that could also fail. But if the School District were to allow the pattern established here with the attempted MSA solution to continue, it would almost guarantee chronic underperformance with no end in sight. The School District needed to take action in the interests of these children. Otherwise, the School District would be accepting institutionalized failure, entitling MSA to settle into a method, manner, and curricula that produce the very results MSA was brought in to improve. MSA demonstrated it could not deliver, and the School District responded in a way the parties fully anticipated and agreed upon.

For the reasons set forth below, the Motion (ECF No. 107) is **DENIED**.[1]

## I. DISCUSSION

A motion for reconsideration is "not to be used as an opportunity to relitigate the case." *Blystone v. Horn*, 664 F.3d 397, 415 (3d Cir. 2011). It is an "extremely limited" remedy, which courts grant only to "correct a clear error of law or fact or to prevent manifest injustice," when there is an intervening change in the law, or based on newly discovered evidence. *Id.* "New evidence" is not evidence that a party, "submits to the court after an adverse ruling. Rather, new evidence in this context means evidence that a party could not earlier submit to the court because that evidence was not previously available. Evidence that is not newly discovered, as so defined, cannot provide the basis for a successful motion for reconsideration." *Id.* at 415–16 (cleaned up) (internal citations omitted).

Of the grounds for reconsideration, Plaintiffs state that alteration or amendment of the July 14, 2025 Order is necessary to:

(1) correct clear factual error, including misstatements of facts and the non-

---

[1] Plaintiffs filed a Notice of Appeal, ECF No. 109, after filing the instant Motion, ECF No. 107. The United States Court of Appeals for the Third Circuit stayed the appeal pending disposition of this Motion. ECF No. 114. Accordingly, jurisdiction is proper for the Court to rule on the instant Motion.

3

consideration of facts raised by Plaintiffs; (2) correct clear legal error by not seemingly conducting a sufficient specific inquiry into direct and circumstantial evidence of discriminatory intent, and not sufficiently determining the implications of Section 29; (3) consider newly available evidence that, unbeknownst to Plaintiffs, emerged just weeks prior to the order being issued, or otherwise consider such evidence to prevent manifest injustice; [and (4)] provide for an opportunity to Plaintiffs to file supplemental briefings to further support affirmative defenses. [2]

ECF No. 107 at 1.

Plaintiffs' Motion largely presents the same arguments set forth by Plaintiffs in their dispositive motions. There is no need for the Court to correct a clear error of law or fact, newly discovered evidence does not compel amendment of the order, and there is no need to provide Plaintiffs with additional time for briefing. The Court addresses each argument in turn, below.

### 1) The Court Did Not Commit Clear Factual Error

Plaintiffs argue that the Court committed several factual errors and did not consider evidence that the Framework impacted the SDP's decision to effectuate the Surrender Clause since (1) the Plaintiffs cited additional evidence not considered by the Court, (2) the Court failed to consider the June 23, 2022 Board of Education meeting which was **not** in the record, and (3) the Court failed to consider evidence that was in the record but was not cited to by Plaintiffs. ECF No. 107-2 at 10–17. Later in the Motion, Plaintiffs also argue the Court committed factual error when it compared 2011–2012 PSSA data to recent PSSA data. *Id.* at 32–33.

i. SDP's Decision to Effectuate the Surrender Clause

The Court held that "[t]he evidence . . . does not show a dispute of material fact that the Surrender Clause was invoked for reasons other than failing to meet the conditions contained in

---

[2] The Court lays out Plaintiffs' arguments, *see* ECF No. 107-2 at 10–36, in this memorandum according to the four reasons Plaintiffs provide in their Motion as grounds for reconsideration, *see* ECF No. 107 at 1. In the Memorandum accompanying their Motion, Plaintiffs' headings do not provide clarity as to the specific ground for reconsideration the arguments support. The headings oscillate in formatting (bold underlined text, underlined text, bold text without underlines, and back to bold underlined text), are numbered inconsistently (a., i., ii., iii., b., a., b., c., c., d., e., i., ii., f.), and are not indented properly (indenting only the first set of small roman numerals). ECF No. 17-2 at 10–36.

4

the 2018 Charter." ECF No. 105 at 30. The Court further held that "[e]ven if MSA pointed to evidence in the record that the SDP invoked the Surrender Clause because of the Framework, MSA's arguments would fail for the same reasons described in Section III.B., *infra*. MSA, as crossclaim defendant asserting affirmative defenses, has not pointed to a material dispute of fact that the 2018 Charter, the conditions, the Surrender Clause, nor the exercise of the Surrender Clause were racially discriminatory." *Id.*

Plaintiffs argue they brought three facts to the attention of the Court that show a genuine dispute of material fact that the Surrender Clause was invoked for reasons other than failing to meet the conditions contained in the 2018 Charter. ECF No. 107-2 at 10. Namely, (1) the SDP's Board excused the failure to meet conditions of two other charter schools with similar surrender clauses and instead opted to grant five-year renewals, *id.* at 11 (first citing ECF No. 89-4 at 34; then citing ECF No. 93 at 24–25); (2) that the SDP could have but did not invoke the Surrender Clause in 2020, *id.* at 12 (first citing ECF No. 93 at 24; then citing ECF No. 105 at 31 n.22); and (3) that the SDP Board President testified that the CSO making a non-recommendation is tantamount to a recommendation that the Board consider adverse action, *id.* at 14 (citing ECF No. 89-4 at 33). The evidence presented by Plaintiffs was either explicitly considered by the Court or does not show a genuine dispute of material fact.

First, Plaintiffs point to the five-year renewals of two Universal Charter schools that had financial-based conditions with surrender clauses. They argue this suggests that the Board of Education does not consider a surrender clause to be "an automatic, rubber stamped, process whereby once [it] is triggered by a condition not being met ." *id.* at 11–12. Further, since the ACE-R represents the "**totality of information** that was communicated to the SDP's board," the "only 'other factor'" the Board considered was the ACE-R. *Id.* at 12 (emphasis in Plaintiffs'

5

Motion).

This argument ignores that MSA's ACE-R was also the document that the CSO used to communicate MSA's outcomes on the academic conditions. ECF No. 88-19 at 27 (including outcomes on conditions and pointing to specific data in the ACE-R). The portions of Universal Vare and Audenried's ACE-Rs provided as evidence to the Court, ECF No. 89-13, show mixed results on conditions vastly different than the failure of MSA on all its academic conditions, *compare id.* at 3–5, 8–10 (showing mixed results on various financial conditions), *with* ECF No. 88-19 at 27 (showing failure on each academic condition). The Universal Charter schools' mixed reports on financial conditions along with accompanying charter renewals are not evidence that creates a reasonable inference that MSA's performance on the Academic Success Domain ("ASD") of the Framework played a direct and crucial role in the School District's decision to invoke the Surrender Clause.

Second, Plaintiffs explicitly state in their Motion that the Court considered that the SDP could have invoked the Surrender Clause in 2020. ECF No. 107-2 at 12 ("Plaintiffs recognize that this Court previously found that '[t]he Surrender Clause does not require that SDP determine whether the academic targets were met by a specific date.'" (first quoting ECF No. 40 at 7; then citing ECF No. 105 at 31)) The Court reviewed the evidence and held that "SDP's decision to wait until all relevant data through the 2021–2022 school year was received to invoke the Surrender Clause—as anticipated in the Surrender Clause—is not evidence supporting the timing-based affirmative defenses." ECF No. 105 at 31. Plaintiffs now stretch this evidence even further to argue it supports a dispute of material fact as to whether MSA's performance on the ASD played a direct and crucial role in the SDP's decision to invoke the Surrender Clause. Waiting until the date anticipated in the 2018 Charter to review the conditions in the Surrender Clause is

not evidence that creates a reasonable inference that the ASD played a direct and crucial role in the SDP's decision to invoke the Surrender Clause.

Finally, Plaintiffs try to connect the SDP Board President's statement about the meaning of a non-recommendation on an ACE-R as well as conducting the entire ACE-R with the decision to invoke the Surrender Clause. ECF No. 107-2 at 14. Again, MSA's ACE-R was the document the CSO used to communicate MSA's outcomes on the academic conditions included in its charter. ECF No. 88-19 at 27. This is not evidence that creates a reasonable inference that the ASD played a direct and crucial role in the SDP's decision to invoke the Surrender Clause.

### ii. The June 23, 2022 Board of Education Meeting

Plaintiffs argue that a June 23, 2022 Board of Education meeting—**not** included in the record and presented as Exhibit 63 to Plaintiff's Motion—shows that the Board of Education was considering more than the metrics linked to the Surrender Clause. ECF No. 107-2 at 15–16. The Court declines to take judicial notice of a recording of a meeting that occurred well before the close of discovery and which is not in the record. *See id.* at 14 n.18 (requesting the Court take judicial notice of a 2022 Board of Education meeting not in the record).

### iii. President Streater Testimony in the Record But Not Cited

Plaintiffs also argue that two lines of President Streater's deposition testimony are evidence that creates a reasonable inference that the ASD played a direct and crucial role in the SDP's decision to invoke the surrender clause. *Id.* at 16–17. These two lines are part of a description of the data included in the ACE-R—"window dressing" for the Surrender Clause. *See id.*

Plaintiffs did not use this evidence to support their briefing prior to this Court's July 14, 2025 order. *Id.* at 16 n.21. Instead, Plaintiffs ask the Court to review it now. *Id.* Setting aside Plaintiffs' attempt to relitigate their arguments with evidence on which Plaintiffs did not

7

previously rely, the evidence cited does not create a reasonable inference that the ASD played a direct and crucial role in the SDP's decision to invoke the Surrender Clause. Rather, it highlights that the ACE-R was the report that presented the data to the SDP to consider if the conditions were met.

### iv. The Court's Accurate Description of PSSA Scores is Not Clear Factual Error

Plaintiffs argue that the Court's accurate description of a numerical drop in percentage scores is factual error. Plaintiffs argue the PSSA was revised during the 2014–2015 school year and thus later scores should not be compared to previous scores. ECF No. 107-2 at 32–33. However, the PSSA scores that played a part in triggering the Surrender Clause occurred **after** the 2014–2015 school year. SDP Stipulated Facts ¶ 119; *see* ECF No. 88-19 at 27 (stating that MSA did not meet the condition in the **2018–2019** school year). As such, Plaintiffs point out a numerically correct, though irrelevant "error" by Court.

\* \* \*

Accordingly, the Court did not commit clear factual error that would compel amending the July 14, 2025 Order. The Surrender Clause was properly invoked by the School District of Philadelphia, and MSA must close.

### 2) The Court Did Not Commit Clear Legal Error

In addition to factual errors, Plaintiffs also argue the Court made various legal errors. Plaintiffs argue that the Court "fail[ed] to perform [a] sensitive inquiry into intent." ECF No. 107-2 at 17 (capitalization removed). Plaintiffs also argue the Court erred in its application of rational basis review. *Id.* at 30–31. Finally, Plaintiffs argue that the Court erred in its analysis of Article I, Section 29 of the Pennsylvania Constitution. *Id.* at 35–36.

The Court performed a sensitive inquiry into intent, repeatedly analyzing the record throughout the memorandum opinion. The Court discussed intent extensively in the "purpose" prong of the Title VI analysis, *see* ECF No. 105 at 37–40, as well as in the context of Title VI deliberate indifference, *see id.* at 41–45. With little caselaw provided by Plaintiffs and citations to largely inapposite contexts, *see id.* at 42, the Court used *Blunt v. Lower Merion School District*, 767 F.3d 247 (3d Cir. 2014)—the very case that adopted deliberate indifference analysis in the Title VI context—to guide its analysis of the record. *See* ECF No. 105 at 41–45. The Court performed a sensitive inquiry into intent.[3]

The Court also conducted an appropriate rational basis review after substantial analysis of the record. *See id.* at 22–41. So, too, did the Court engage in careful consideration and analysis of Article I, Section 29 of the Pennsylvania Constitution. *See id.* at 45–48.

Accordingly, the Court did not commit clear legal error that would compel amending the July 14, 2025 Order.

### 3) The New Evidence Presented to the Court Does Not Compel Amending the Court's Order

Plaintiffs also argue newly discovered evidence compels the Court to amend its July 14, 2025 Order. ECF No. 107-2 at 1–2. The new evidence is the June 12, 2025 and June 26, 2025 public presentations held on the CSO's renewal recommendations for charter schools. *Id.* at 1–2, 4–8. The Board of Education largely adopted the recommendations of conditions or recommendations of non-renewal for the charters. *Id.* at 1–2, 4–8. Plaintiffs also raise new evidence from the same meetings in which the Board "expressly impos[ed] race-based

---

[3] Plaintiffs relitigate the same arguments made in their briefing while incorporating some of the "new" evidence, discussed below in Section 3. ECF No. 107-2 at 21-27. The Court previously conducted a sensitive inquiry in its prior memorandum opinion.

9

conditions." *Id.* at 1–2, 8–9. This new evidence does not compel the Court to amend its order since the evidence is duplicative of the evidence previously considered in the Court's memorandum opinion or is unrelated to the domain at issue in this lawsuit.

Plaintiffs describe the June 2025 renewal recommendations and the Board's actions as "tragically predictable." *Id.* at 1. The "predictable" nature of this evidence highlights that it is duplicative of the evidence already presented to the Court. Exhibit 31, previously considered by the Court, attests to the veracity of the table including all the charter renewal cohorts to date. ECF No. 93-4 (providing hyperlinks to the charter renewal cohort tables as well as directing the Court to Plaintiff's Exhibit 30). The table included the renewal recommendations, if conditions were included, and other renewal information for each charter school. ECF No. 88-30. The new evidence presented to the Court is simply a continuation of the evidence the Court previously considered. The Court ruled that this table, in part, showed there was a genuine dispute of material fact on the "impact" prong of the Title VI analysis. ECF No. 105 at 36–37. The evidence previously before the Court, or its continuation in the form of the June 2025 charter conditions and non-renewals, do not show discriminatory intent or purpose. *Id.* at 37–40. As such, it does not change the Court's analysis and compel an amendment of the July 14, 2025 order.

Next, Plaintiffs present "race-based conditions" as new evidence that compels the Court to amend its order. ECF No. 107-2 at 1–2, 8–9. These "race-based conditions" were conditions pertaining to suspensions. *Id.* at 8–9. Suspensions are considered in the "Climate and Culture" portion of the "Organizational Compliance and Viability" domain of the Framework. ECF No. 88-28 at 11. They are not analyzed as part of the ASD, the subject of this lawsuit. *See id.* at 2–4, 6; ECF No. 105 at 6. This evidence is not related to the ASD and distracts from the issues presently before the Court. As such, it does not change the Court's analysis and compel an

10

amendment of the July 14, 2025 Order.

### 4) Plaintiffs Had Extensive Opportunity to Support Their Affirmative Defenses

Plaintiffs argue that they should be given additional time to file supplemental briefing on the affirmative defenses raised in their Answer to SDP's Counterclaim. ECF No. 107-2 at 33–34. They argue that:

> [the affirmative defenses] were not simply boilerplate affirmative defenses but extensively detailed to put SDP on notice from the start of this litigation. This Court acknowledged such affirmative defenses. ECF No. 105 at 26, n.19. Plaintiffs recognize that the parties were engaging in briefing the Court on their respective positions; however, this Court also abruptly precluded the parties from submitting any additional responses. *See* ECF No. 104.

*Id.* at 33.

Plaintiffs had ample opportunity to develop and brief their affirmative defenses. Plaintiffs first raised their affirmative defenses on July 31, 2023. *See* ECF No. 47. Defendant moved for summary judgment on its counterclaim on December 6, 2024. *See* ECF No. 90. Plaintiffs filed a Response to Defendant's motion for summary judgment on January 10, 2025, ECF No. 93, and a Sur-Reply on February 24, 2025, ECF No. 102. On April 21, 2025—nearly one month later—the Court issued a notice that it would "not permit any further responses by the parties concerning the cross Motions for Summary Judgment." ECF No. 104.[4] The Court denies Plaintiffs' request to relitigate these issues after Plaintiffs had extensive opportunities to brief their affirmative defenses.

## II. CONCLUSION

The "extremely limited" remedy of reconsideration is inappropriate here. *See Blystone*, 664

---

[4] By this point, the parties had filed the following motions and briefs: Plaintiffs' Motion for Summary Judgment (ECF No. 89), Defendant's Motion for Summary Judgment (ECF No. 90), Plaintiffs' Response (ECF No. 93), Defendant's Response (ECF No. 94), Plaintiffs' Reply (ECF No. 99), Defendant's Reply (ECF No. 98), Plaintiffs' Sur-Reply (ECF No. 102), and Defendant's Sur-Reply (ECF No. 103).

F.3d at 415. Accordingly, Plaintiffs' Motion (ECF No. 107) is denied. An appropriate order will follow.

BY THE COURT:

/s/ Chad F. Kenney

**CHAD F. KENNEY, JUDGE**

F.3d at 415. Accordingly, Plaintiffs' Motion (ECF No. 107) is denied. An appropriate order will follow.

BY THE COURT:

/s/ Chad F. Kenney

**CHAD F. KENNEY, JUDGE**